CITIZENS' GAS LIGHT COMPANY OF READING, SOUTH READ-
ING, AND STONEHAM *vs.* INHABITANTS OF WAKEFIELD.

Middlesex.     March 26, 1894. — May 18, 1894.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Purchase of Gas and Electric Light Plants by Town — Schedule of Property —
Call for Stockholders' Meeting — Ratification by Stockholders of Acts of
Directors — Constitutional Law.*

There is nothing in St. 1891, c. 370, indicating that, after a town has voted at two
separate town meetings called as required by § 13 that it is expedient to exer-
cise the authority conferred by the statute pursuant to § 3, any additional vote
is necessary.

The specific property which a town is required to purchase in accordance with the
provisions of St. 1891, c. 370, and the price, time, and other conditions of the
sale, are to be determined by the commissioner or commissioners to be appointed
under § 13 ; and if the poles for the support of the wires of an electric light
company used in distributing electricity were not legally located, this would not
entirely defeat the petition under the statute, and what effect it would have
upon the property to be purchased or the price to be paid for it cannot be
determined under such petition

The schedule of property under St. 1891, c 370, is required for the purpose, not of
furnishing such a formal description as may be necessary or proper in a convey-
ance, but of furnishing such information in detail to a city or town that the
parties may intelligently negotiate for the purchase, or, if the parties cannot
agree, of furnishing to the commissioners such a bill of particulars as may be
necessary or convenient for an intelligent adjudication of the matters which
they are to determine.

On a petition by a gas and electric light company to compel a town to purchase its
plant, etc., agreeably to the provisions of St. 1891, c. 370, it appeared that a
schedule required by the statute was filed by the secretary of the company
under the authority of a vote of its directors and that the stockholders at a
meeting called to take action upon the proposition to sell, etc., and to transact
such other business as should come before the meeting, ratified the action of
the directors, but this was more than thirty days after the passage of the final
vote by the town that it was expedient to exercise the authority conferred by
the statute. It did not appear that there was any change of position on the
part of either of the parties between the action of the directors and that of the
stockholders, and the petitioner duly filed its petition within sixty days after
the filing of the schedule. The town took no action to rescind its votes between
the time of filing the schedule and the vote of the stockholders, if such action
could have been taken, and the petitioner never attempted to repudiate the
action of the directors. *Held*, that the vote of the stockholders must be con
sidered as within the call for the meeting at which it was passed, and that, with-
out considering whether the determination to sell the property and to file the

schedule according to the statute was within the authority of the directors, and assuming that the filing of the schedule within the thirty days was to be treated as a condition precedent to the right of the company to enforce the obligation of a town to purchase its property, the ratification by the stockholders must be taken as equivalent to original authority.

The St. 1891, c. 370, entitled "An Act to enable cities and towns to manufacture and distribute gas and electricity," is constitutional.

FIELD, C. J.   This is a petition under St. 1891, c. 370, § 13, and the case comes before us by appeal from an order of a single justice overruling the demurrer of the respondent, and by appeal from a decree of a single justice appointing commissioners to determine what property shall be sold by the petitioner and bought by the respondent, and what the price, time, and other conditions of the sale and delivery shall be.   The facts on which the decree is founded are recited in the decree.   The petition was filed on October 28, 1892, and all the proceedings were had before the passage of St. 1893, c. 454.

The decree recites "that the petitioner is, and was at the times set forth in the petition, a corporation established under the laws of Massachusetts and having its usual place of business at Wakefield, in the county of Middlesex; that it is, and was at said times, engaged in the business of manufacturing gas for the use of the inhabitants of the towns of Wakefield, Reading, and Stoneham, with its main gas works in Wakefield, and with pipes extending into the towns of Reading and Stoneham; that it was duly authorized by the board of gas commissioners, and by the necessary vote of stockholders, under and in pursuance of chapter 385 of the Acts of 1887, to engage in the business of generating and furnishing electricity for light and power in the towns of Reading, Wakefield, and Stoneham, and is and was at said times engaged in furnishing electric light for commercial purposes to the inhabitants of the town of Wakefield, with its central lighting station in Wakefield."

It is contended that the two votes passed by the town pursuant to St. 1891, c. 370, § 3, to the effect "that it is expedient for the town to exercise the authority conferred upon towns under the provisions of chapter 370 of the Acts of the Year 1891," are not equivalent to a vote that the town decides to establish a plant for the manufacture and distribution of gas and electricity, but that an additional vote to the effect that

the town decides to establish such a plant is required before the town becomes subject to the obligations imposed by the statute. See §§ 12 and 13. But the statute makes provision for only two votes. Section 12 begins as follows: " When any city or town shall decide as hereinbefore provided to establish a plant, and any person, firm, or corporation shall at the time of the first vote required for such decision be engaged," etc. The provisions thereinbefore made are the votes required by § 3, and the first vote must mean the first vote required by that section. Section 13 begins as follows: " Any person, firm, or corporation desiring to enforce the obligation of any city or town under section twelve to purchase any property shall file with the clerk of such city or town, within thirty days after the passage of the final vote whereby such city or town shall have decided to establish a plant, a detailed schedule describing such property and stating the terms of sale proposed," etc. The final vote must be the vote at the last of the two legal town meetings mentioned in § 3. This construction is confirmed by the language in the last clause of § 18. We find nothing in the statute anywhere indicating that, after the town has voted at two separate legal town meetings called as required by § 3 that it is expedient to exercise the authority conferred by the statute pursuant to § 3, any additional vote is necessary, and we think that this contention cannot avail.

Section 12 provides as follows: " When any city or town shall decide as hereinbefore provided to establish a plant, and any person, firm, or corporation shall at the time of the first vote required for such decision be engaged in the business of making, generating, or distributing gas or electricity for sale for lighting purposes in such city or town, such city or town shall, if such person, firm, or corporation shall elect to sell and shall comply with the provisions of this act, purchase of such person, firm, or corporation before establishing a public plant such portion of his, their, or its gas or electric plant and property suitable and used for such business in connection therewith as lies within the limits of such city or town. If in such city or town a single corporation owns or operates both a gas plant and an electric plant, such purchase shall include both of such plants," etc. The petitioner, as the decree recites, operated both a gas plant

and an electric plant in the town of Wakefield. The respondent contends that its poles for the support of the wires used in distributing electricity were not legally located in the town of Wakefield. On this question the decree recites as follows:

" It appeared that an application by petitioner for permission to erect and maintain poles and wires in the streets of Wakefield had been made to the selectmen of Wakefield under the provisions of chapter 382 of the Acts of 1887 (there being another company in said town engaged in or organized for the purpose of doing an electric lighting business), that said permission was refused by said selectmen, but upon appeal taken to the board of gas and electric light commissioners, under the provisions of said act, the decision of the selectmen was reversed, and said permission granted, the order of said board being as follows, viz.:

" ' The Board of Gas and Electric Light Commissioners.

' Boston, May 27, 1890.

" ' In the matter of the appeal of the Citizens' Gas Light Company of Reading, South Reading, and Stoneham from the decision of the selectmen of Wakefield refusing to grant it permission to erect poles and string wires in the streets of said town, Ordered, that the decision of the selectmen be reversed, and that permission is granted to the Citizens' Gas Light Company of Reading, South Reading, and Stoneham to erect wires over or under the streets, lanes, and highways of the town of Wakefield for the purpose of supplying electricity for light and power.'

" Thereafter, on August 7, 1890, at a regular meeting of said board of selectmen, without petition, notice to parties interested or a public hearing, the following vote was passed, viz.:

" ' Voted, that the Citizens' Gas Light Company of Reading, South Reading, and Stoneham be, and is hereby, authorized and empowered to engage in the business of furnishing electricity for light and power in the town of Wakefield, and to erect poles and string wires in the streets and highways of said town, the location of said poles to be hereafter designated, and subject to such restrictions as to quality and style as may be imposed by the selectmen of said town of Wakefield, and subject also to such other provisions and conditions as may be required by said board of selectmen.'

" And a copy of said vote was furnished to the petitioner by

the secretary of the board of selectmen of the town of Wakefield. But, except as aforesaid, the selectmen of the town of Wakefield had not given the petitioner any writing specifying where the posts to be used might be located, the kind of posts, and height at which and the places where the wires might run; and no such specifications had been recorded in the records of the town of Wakefield in accordance with chapter 109, section 3, of the Public Statutes, and of chapter 221 of the Laws of 1883; and except as aforesaid, said petitioner received no written consent from the board of selectmen of said town to erect poles, lay or erect wires over or under the streets, lanes, and highways of said town, or to dig up and open the ground within the streets or highways of said town for the purpose of laying lines of wires or to erect and maintain lines of wires upon or above the surface of the streets and highways of said town as provided in either chapter 382 or 385 of the Acts of 1887, or in compliance with any other statute. As to whether any oral directions or consent regarding said matters were given by the selectmen, no evidence was introduced by either party."

The contention is that so far as the electric plant is concerned every pole supporting the wires within the limits of the highways in the town of Wakefield is a public nuisance, and that the town cannot be compelled to purchase property of the petitioner which the petitioner cannot legally use, and which may be removed or destroyed as a nuisance. The petitioner had received general authority to erect poles and lay wires in the public streets of the town. How far the particular location of the poles and the quality and style of them were subject to the approval of the selectmen of the town need not now be considered. The petitioner actually owned and operated an electric plant in the town. The specific property which the town is required to purchase in accordance with the provisions of the act, and the price, time, and other conditions of the sale, are to be determined by the commissioner or commissioners to be appointed under § 13. If the poles in the public ways were not legally located, this would not entirely defeat the petition; and what effect it would have upon the property to be purchased or the price to be paid for it cannot now be determined.

The respondent contends that the petitioner has not com-

plied with the provisions of the act in filing a detailed schedule of the property within thirty days after the passage of the final vote, as required by § 13. The final vote was on August 15, 1892. The directors of the company, on September 9, 1892, voted that the company file a detailed schedule of its property in accordance with the act, and that the secretary be authorized to sign and file the same; and on September 12 the secretary, in the name of the company, filed with the clerk of the town a statement in detail of its plant, and the price and terms upon which the company would sell its property to the town. The contention is that the schedule should not be a mere list or catalogue of property, but a formal inventory, with a particular description sufficient to enable a court to make a decree for specific performance, or such as would be required in a formal conveyance of the property. The provisions of the statute are, that, if the corporation desires to enforce the obligation of the town to purchase any property, it shall file " a detailed schedule describing such property and stating the terms of sale proposed. If the parties fail to agree as to what shall be sold, or what the terms of sale and delivery in accordance with the provisions of this act shall be," either party may apply to the court, and the court shall appoint a commissioner or commissioners who shall adjudicate " what property, real or personal, including rights and easements, shall be sold by the one and purchased by the other." It is evident that the schedule is not intended to settle finally just what property is to be included in the sale. We think that the schedule was required for the purpose, not of furnishing such a formal description of the property as may be necessary or proper in a conveyance, but of furnishing such information in detail to a city or town as the parties may need intelligently to negotiate for the purchase, or, if the parties cannot agree, of furnishing to the commissioners such a bill of particulars as may be necessary or convenient for an intelligent adjudication of the matters which they are to determine. We cannot say that the schedule filed in this case on its face appears not to be made up in sufficient detail to enable the town to understand what property specifically the petitioner owned and used in its business in the town of Wakefield, and we think that the commissioners probably could identify the property from the schedule, and

intelligently make their adjudication. Certainly it does not appear in the papers before us that the commissioners will be unable to identify the property from the schedule, and from such facts as necessarily must be put in evidence before them.

The schedule was filed by the secretary under the authority of a vote of the directors of the company, and it is contended that it was beyond the power of the directors to determine whether the company would elect to sell its property to the town and avail itself of the provisions of the statute. See Pub. Sts. c. 106, § 23. The by-laws of the company are not set out in the papers. It appears, however, that on September 19, 1892, the stockholders, at a meeting called for the purpose of taking action upon a proposition to sell the plant and assets of the company, and to transact such other business as should come before the meeting, ratified the action of the directors, but this was more than thirty days after the passage of the final vote by the town. We think that the vote of the stockholders must be considered as within the notice or call for the meeting at which it was passed.* It does not appear that there was any change of position on the part of either of the parties between the action of the directors and that of the stockholders, and the petitioner duly filed its petition within sixty days after the filing of the schedule. Without considering whether the determination to sell the property to the town, and to file the schedule in accordance with the provisions of the statute, was within the authority of the directors, and assuming that the filing of the schedule within the thirty days is to be treated as a condition precedent to the right of the company to enforce the obligation of a city or town to purchase its property, we are of opinion that the ratification by the stockholders in this case must be taken as equivalent to original authority. The town took no action to rescind its votes between the time of filing the schedule and the vote of the stockholders, if any such action could have been taken, and the petitioner has never attempted to repudiate the action of the board of directors.

* The respondent contended that the stockholders were not authorized to pass the vote which they did, as the meeting of the stockholders was a special one, called for the purposes set forth in the notice, and there was nothing in that notice informing the stockholders that there would be a motion to ratify the action of the directors.

See *Bolton* v. *Lambert*, 41 Ch. D. 295 ; *Andrews* v. *Ætna Ins. Co.* 92 N. Y. 596 ; *Nims* v. *Mount Hermon Boys' School*, 160 Mass. 177 ; *Dempsey* v. *Chambers*, 154 Mass. 330.

It is contended that St. 1891, c. 370, is unconstitutional. It is not in violation of the Constitution of Massachusetts for the Legislature to authorize a town to purchase and maintain either a gas or an electric plant for the purpose of furnishing light to its inhabitants. *Opinion of the Justices*, 150 Mass. 592. The Legislature might have authorized cities and towns to erect and maintain such plants without requiring the cities or towns to purchase any existing plant of this kind belonging to private persons or a corporation, but it has not done so. Under this statute a city or town is not required to establish any such plant, and private persons or corporations are not required to sell to any city or town any existing plant. In this respect, there is nothing compulsory in the statute. But if a town chooses to act under the statute, it must act in accordance with its provisions and take the burdens with the benefits. The statute does not provide for a trial by jury upon the value of the property purchased, or upon any of the terms of the purchase. If we assume that, when property is taken by a town for a public use, the owner of the property has a right to a jury trial upon the amount of the reasonable compensation to be paid, still Article XV. of the Declaration of Rights has no application to a party who comes in voluntarily under the provisions of a statute which provides for the determination of his rights and obligations in another manner than by a jury trial.

*Decree affirmed.*

*S. K. Hamilton*, for the respondent.
*E. R. Champlin & C. R. Darling*, for the petitioner.