## UNITED STATES v. NATIONAL CITY BANK OF NEW YORK.

(Circuit Court of Appeals, Second Circuit. April 18, 1922.)

No. 186.

**1. War ⬳14—Plaintiff bank held "person entitled to receive" compensation for coffee commandeered under Lever Act.**

Where a bank paid for coffee on account of a Russian company, its payment resulting in an overdraft by the company secured by a lien on the coffee, and the coffee was later commandeered under Lever Act, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), and 75 per cent. of the price fixed by the government paid, the bank, as holder of negotiable warehouse receipts issued to it, held the legal title, under General Business Law N. Y. § 125, and was entitled to sue the government for the balance of the compensation due, as the "person entitled to receive" such compensation, as trustee for its principal, the Russian company.

**2. Jury ⬳28(3)—Right to jury trial under Lever Act may be waived.**

One suing under Lever Act, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), to recover a balance of compensation due for property commandeered, and the government, have a constitutional right to a jury trial; but such right is a mere privilege, and may be waived.

**3. Jury ⬳25(2)—How jury trial may be waived.**

The right to a jury trial may be waived by any conduct or acquiescence inconsistent with an intention or expectation to insist on it, and is waived by permitting the court, without any objection or demand for a jury trial, to proceed to hear and determine the case.

**4. Appeal and error ⬳181, 242(1)—Circuit Court of Appeals can review only erroneous rulings called to attention of trial court and passed on by it.**

The Circuit Court of Appeals, on writ of error in a civil case, can review only erroneous rulings made by the District Court on questions called to its attention and passed on by it.

**5. Appeal and error ⬳849(1)—Assignments of error, based on findings of fact and admission of evidence, not reviewable on writ of error after trial by court.**

Under Rev. St. §§ 566, 649, 700 (Comp. St. §§ 1583, 1587, 1668), where the parties have waived jury trial in the federal District Court, the Circuit Court of Appeals, on writ of error, is not at liberty to consider assignments of error based on trial court's findings of fact and refusals to find facts, alleged errors and conclusions of law which the court found, and refusing to find conclusions of law based on findings of fact, nor alleged errors in admitting evidence.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by the National City Bank of New York against the United States. Judgment for plaintiff (275 Fed. 855), and the United States brings error. Affirmed.

William Hayward, U. S. Atty., of New York City (John Holley Clark, Jr., of New York City, of counsel), for the United States.

Shearman & Sterling, of New York City (Carl A. Mead and Philip A. Carroll, both of New York City, of counsel), for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. This proceeding is brought to recover "just compensation" for 20,000 bags of coffee requisitioned by the

government of the United States for the use of the navy on November 21, 1918.

The petitioner, the National City Bank of New York, hereinafter called the Bank, held the coffee in the city of New York "for the account" of the owners on the day of its requisition. The market value of the coffee in New York on the day of its requisition is alleged in the petition to have been $585,146.87. No part of the just compensation for the coffee has been paid by the United States, except the sum of $313,356.77, that sum having been paid to the Bank on August 22, 1919. The petitioner therefore prays for judgment in the sum of $271,790.10, with interest from November 21, 1918. The court below, on May 25, 1921, entered judgment in favor of the Bank and against the United States in the amount of $291,573.33, which includes interest and costs and disbursements as taxed.

The petition is filed under section 10 of the Act of August 10, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), commonly known as the Lever Act, which was passed to provide for the national security and defense. 40 Stat. at L. c. 53, p. 276. The provisions of section 10 of that act may be found in the margin.[1] Under the section referred to the President was authorized from time to time to requisition foods and other supplies necessary to the support of the army or the maintenance of the navy, and the act provided that the President should pay a just compensation for property so requisitioned. And it was provided that if the compensation the President determined to be just was not satisfactory to the person entitled to receive it, such person should be paid 75 per centum of the amount so determined, and he should be entitled to sue the United States to recover such further sum as added to the amount paid would be just compensation. Jurisdiction was conferred upon the District Courts to hear and determine all such controversies.

The coffee herein involved having been commandeered on November 21, 1918, and the government having awarded the sum of $423,536.69 at the price of 15.29 cents per pound f. o. b. warehouse as compensation, the Bank notified the government on July 5, 1919, that the award was not satisfactory. Thereupon, and on August 26, 1919, the govern-

---

[1] "That the President is authorized, from time to time, to requisition foods, feeds, fuels, and other supplies necessary to the support of the army or the maintenance of the navy, or any other public use connected with the common defense, and to requisition, or otherwise provide, storage facilities for such supplies; and he shall ascertain and pay a just compensation therefor. If the compensation so determined be not satisfactory to the person entitled to receive the same, such person shall be paid seventy-five per centum of the amount so determined by the President, and shall be entitled to sue the United States to recover such further sum as, added to said seventy-five per centum will make up such amount as will be just compensation for such necessaries or storage space, and jurisdiction is hereby conferred on the United States District Courts to hear and determine all such controversies: Provided, that nothing in this section, or in the section that follows, shall be construed to require any natural person to furnish to the government any necessaries held by him and reasonably required for consumption or use by himself and defendants, nor shall any person, firm, corporation, or association be required to furnish to the government any necessaries for the seeding of land owned, leased, or cultivated by them."

ment paid to the Bank 75 per centum of the amount of the award, or the $313,356.77, which, as already stated, constitutes the sole amount which has as yet been paid. Thereafter, and on September 19, 1919, the Bank instituted this proceeding to recover the balance of the "just compensation" to which it claims to be entitled. When the cause came on to be heard in the court below it was tried without a jury; and the court found as a conclusion of law that the legal title to all of the coffee was in the plaintiff, both at the time when the coffee was requisitioned by the President and at the time of the commencement of this action. As this is one of the errors assigned, we shall consider it at the outset, and before proceeding to a consideration of any of the other errors upon which the government relies.

[1] It appears that all the coffee herein involved had been imported into this country prior to January 18, 1918. On that date it was bought on a cable order from the North Oceanic Steamship & Trading Company, a Russian corporation located at Archangel. It is hereinafter referred to as the Russian Company. This cable was addressed to Francisconi & Co., a New York firm dealing in coffee. The coffee was purchased with the intention of exporting it to Northern Russia. The Bank paid for the coffee under a letter of credit in favor of Francisconi & Co. and Hard & Rand, also coffee dealers, for account of the Russian corporation. These payments resulted in an overdraft which amounted to $13,324.60. On November 21, 1918, and on July 5, 1919, the overdraft was increased to $94,312.42. This was secured by a lien on the coffee and by the warehouse receipts, which were issued to the order of the Bank and were negotiable. These warehouse receipts the Bank continued to hold during the times herein involved, and they invested the Bank with the legal title. Under the New York law a person to whom a negotiable warehouse receipt has been negotiated acquired thereby—

"such title to the goods as the person negotiating the receipt to him had or had ability to convey to a purchaser in good faith for value, and also such title to the goods as the depositor or person to whose order the goods were to be delivered by the terms of the receipt had or had ability to convey to a purchaser in good faith for value." New York General Business Law (Consol. Laws, c. 20) § 125.

As the holder of the legal title, although it held the title for the real owners in Russia, the Bank was "the person entitled to receive" the compensation under section 10 of the Lever Act, and was likewise the person entitled to sue the United States in the manner as therein provided. The facts as to title alleged in the plaintiff's petition show such title in the petitioner as sustains the judgment, if the evidence produced sustained the allegations, as we must assume it did, to the satisfaction of the trial court.

[2] We have said that the case was tried without a jury, and the fact that it was so tried is one of the errors relied upon to secure a reversal. It is said that the government has been deprived of its constitutional right to a jury trial, as actions brought under section 10 must be tried before a jury. Counsel rely upon United States v. Pfitsch, 256 U. S. 547, 41 Sup. Ct. 569, 65 L. Ed. 1084, decided by the

Supreme Court on June 1, 1921. But that case has no application to the question now presented. The court did not hold in that case what this court is now asked to hold. The question in the Pfitsch Case was whether the jurisdiction of such cases as the one now before the court was one which could be exercised concurrently by the Court of Claims without a jury, or by the District Court with a jury, and the Supreme Court simply held that the jurisdiction conferred on the District Court was not concurrent with that of the Court of Claims, but was exclusively in the District Court, and that the right to a jury trial is an incident of such jurisdiction.

[3] It will be conceded that the parties in the trial of this case had a constitutional right to a jury trial. But the constitutional right to a jury trial in civil cases is a mere privilege, and as such is capable of being waived. Columbia Bank v. Okely, 4 Wheat. 235, 4 L. Ed. 559; North British, etc., Ins. Co. v. Lathrop (C. C.) 63 Fed. 508; United States v. Rathbone, Fed. Cas. No. 16,121; Citizens' Gaslight Co. v. Wakefield, 161 Mass. 432, 37 N. E. 444, 31 L. R. A. 457; Joy v. Blum, 55 N. J. Law, 518, 26 Atl. 861; Baird v. New York, 74 N. Y. 382. And the general rule is that the right to a jury trial may be waived by any conduct or acquiescence inconsistent with an intention or expectation to insist upon it. Dole v. Wooldredge, 142 Mass. 161, 7 N. E. 832; Mackellar v. Rogers, 109 N. Y. 468, 17 N. E. 350; Schumacher v. Crane-Churchill Co., 66 Neb. 440, 92 N. W. 609. And the principle is well established that a jury trial is waived by permitting the court, without any objection or demand for a jury trial, to proceed to hear and determine it. Barnes v. Perine, 12 N. Y. 18; Joy v. Blum, 55 N. J. Law, 518, 26 Atl. 861; Banning v. Hall, 70 Minn. 89, 72 N. W. 817; Baumbach Co. v. Hobkirk, 104 Wis. 488, 80 N. W. 740; Washington v. Louisville, etc., R. Co., 136 Ill. 49, 26 N. E. 653; Claflin v. Steenbock, 18 Grat (Va.) 842.

We have considered the question as to whether the government has been deprived of its constitutional right to a jury trial, notwithstanding the fact that upon the record, for a reason which will appear as we proceed, the government was, strictly speaking, not entitled to raise the question at all. But the conclusion we have expressed upon the question of constitutional right does not alter or affect the judgment to be rendered, upon the record properly before the court. The record shows that, at the time the case was called in the District Court, the following colloquy between court and counsel occurred:

"Mr. Mead (Counsel for the Bank): I claim the right of a jury trial, but for the purpose of the trial of this case I *waive* that right.

"The Court: Then you will have to have a signed stipulation that this may be tried without a jury.

"Mr. Barnes (Counsel for the Government): We don't want to waive that. Our position is that it is not necessary for me to waive that. The government does not waive it. *The government insists there is no waiver necessary, and that the matter be tried before the court without a jury as a matter of law.*

"The Court: Mr. Mead takes the position that that is not correct, but in this particular case he waives it.

"Mr. Mead: Yes."

Mr. Mead and Mr. Barnes made opening statements of their cases to the court.

[4] Inasmuch as the counsel for the government not only made no demand in the trial court for a trial by jury, but actually *insisted* that the case "be tried before the court without a jury," he is in no position now to ask the appellate court to reverse the judgment because the case was tried without a jury. This court, on writ of error in a civil case, can review only erroneous rulings made by the trial court on questions called to its attention and passed on by it. Virtue v. Creamery Package Co., 227 U. S. 8, 38, 39, 33 Sup. Ct. 202, 57 L. Ed. 393; Morrison v. Watson, 154 U. S. 111, 115, 14 Sup. Ct. 995, 38 L. Ed. 927; Dundee Mortgage Company v. Hughes, 124 U. S. 157, 8 Sup. Ct. 377, 31 L. Ed. 357.

[5] When a case is tried in a federal court without a jury, and without a written stipulation waiving a jury trial, certain important consequences follow. The statutes of the United States provide that the trial of issues of fact in the District Courts, in all causes except in equity and cases of admiralty and maritime jurisdiction, and except as otherwise provided in proceedings in bankruptcy, shall be by jury. Rev. St. § 566 (Comp. St. § 1583). Then it is provided that issues of fact in civil cases may be tried and determined by the court, without the intervention of a jury, "whenever the parties, or their attorneys of record, file with the clerk a stipulation in writing waiving a jury," and that the finding of the court upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury. Rev. St. § 649 (Comp. St. § 1587). And it is provided in Rev. St. § 700 (Comp. St. § 1668) that:

"When an issue of fact in any civil cause in a circuit court is tried and determined by the court without the intervention of a jury, according to section 649, the rulings of the court, in the progress of the trial of the cause, if excepted to at the time, and duly presented by a bill of exceptions, may be reviewed by the Supreme Court upon a writ of error or upon appeal; and when the finding is special the review may extend to the determination of the sufficiency of the facts found to support the judgment."

It appears from what has already been said that at the opening of the trial in this case, when counsel for the Bank stated that he would waive the right to a jury trial, the court at once suggested:

"Then you will have to have a signed stipulation that this may be tried without a jury."

Counsel for the government did not seem to grasp the significance of the suggestion. At any rate, while he insisted that the matter should be tried without a jury, he claimed no waiver was necessary, and the case went to trial without a jury, and without any written stipulation waiving the jury. The result is that no question is now open to review in this court on the writ of error, except it be one arising upon the process, pleadings or judgment. This court had occasion to consider the subject in Illinois Surety Co. v. United States, 229 Fed. 527, 143 C. C. A. 595. We declared in that case that, as there had been no written stipulation waiving a jury trial and the case had nevertheless been tried without a jury, it was—

"well settled that none of the questions decided at the trial can be re-examined in this court on writ of error. No questions, therefore, are open to review on error, except they arise upon the process, pleadings, or judgment."

There are numerous decisions in the Supreme Court to the same effect: Campbell v. United States, 224 U. S. 99, 105, 32 Sup. Ct. 398, 56 L. Ed. 684; Rogers v. United States, 141 U. S. 548, 12 Sup. Ct. 91, 35 L. Ed. 853; Spalding v. Manasse, 131 U. S. 65, 9 Sup. Ct. 649, 33 L. Ed. 86; Andes v. Slauson, 130 U. S. 435, 9 Sup. Ct. 573, 32 L. Ed. 989; Dundee Mortgage Co. v. Hughes, 124 U. S. 157, 8 Sup. Ct. 377, 31 L. Ed. 357; Bond v. Dustin, 112 U. S. 604, 607, 5 Sup. Ct. 296, 28 L. Ed. 835; Alexander County v. Kimball, 106 U. S. 623n, 2 Sup. Ct. 86, 27 L. Ed. 311; Gilman v. Illinois & Miss. Tel. Co., 91 U. S. 603, 614, 23 L. Ed. 405.

Counsel for the government, however, relies upon Flanders v. Tweed, 9 Wall. 425, 19 L. Ed. 678. That case was tried without a jury, and there was no stipulation in writing waiving a jury filed, as required by the act of Congress. The circumstances of the case were peculiar. The case was tried in the Circuit Court for the District of Louisiana, and judgment was entered in February, 1868, or about three years after the act of Congress providing for a stipulation in writing waiving a jury; that act having been passed on March 3, 1865. 13 Stat. L. 501 (Comp. St. § 1587). The act was the first one that had authorized the parties to dispense with a jury, except two special acts, one in respect to Louisiana in 1824 (4 Stat. 62), and California and Oregon in 1864 (13 Stat. 4). And under the special circumstances existing the court reversed the judgment for a mistrial and remanded it to the court below, and we are asked to adopt a similar course in this case. This we are not at liberty to do. The Supreme Court, in Reed v. Gardner, 17 Wall. 409, 411, 21 L. Ed. 665, declined to follow Flanders v. Tweed and declared it to be exceptional, and it declined to pass upon any question presented in the bill of exceptions and stated that "the court intend to adhere to this practice." So far as we are aware, Flanders v. Tweed has never been followed in any subsequent case. And see Ladd & Tilton Bank v. Lewis A. Hicks Co., 218 Fed. 310, 311, 134 C. C. A. 106.

The result is that this court is not at liberty on this writ of error to consider the numerous assignments of error based on the trial court's findings of fact and refusals to find certain other facts; and for the same reason we cannot consider alleged errors in the conclusions of law which the court found, and in refusing to find certain other conclusions of law based upon its findings of fact. Neither can we consider the alleged errors in admitting certain opinion evidence.

Judgment is affirmed.