## In re HASTINGS LOCK AND DAM.

## UNITED STATES v. CERTAIN LANDS IN WASHINGTON AND DAKOTA COUNTIES et al.

### No. 2211.

District Court, D. Minnesota, Third Division.

May 17, 1932.

John P. Kyle, Sp. Asst. U. S. Dist. Atty., of St. Paul, Minn., for the United States.

John P. Devaney, of Minneapolis, Minn., for respondents.

NORDBYE, District Judge.

The government filed objections to the taxation of any costs or attorneys' fees on the ground that there is no law or act of Congress of the United States authorizing the taxation of costs against the government in condemnation proceedings.

The appeals in question were made from the awards of the commissioners in the condemnation by the government for an easement for flowage purposes on certain lands made necessary by the construction of the so-called Hastings Lock and Dam.

Counsel for the respondents have presented the court with prodigious and exhaustive briefs, contending that costs should be taxed against the government in condemnation proceedings, in absence of any legislative authority, and the extraordinary zeal exhibited by counsel for the respondents prompts the court to briefly set forth its views herein.

The Fifth Amendment to the Constitution of the United States provides, in part, as follows: " *  *  *  Nor shall private property be taken for public use, without just compensation."

The Act of Congress, August 1, 1888 (25 Stat. 357, c. 728, 40 USCA §§ 257, 258) is entitled: "An act to authorize condemnation of land for sites of public buildings, and for other purposes." The procedure to be followed in federal condemnation proceedings is set out as follows: "Section 2. The practice, pleadings, forms and modes of proceeding in causes arising under the provisions of this act shall conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the State within which such circuit or district courts are held, any rule of the court to the contrary notwithstanding."

The Conformity Act (title 28, § 724, USCA, Rev. St. § 914) provides as follows: "Conformity to practice in state courts. The practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the district courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the State within which such district courts are held, any rule of court to the contrary notwithstanding."

The provisions of the Minnesota statutes relating to eminent domain are found in chapter 41, §§ 6537 to 6578, inclusive, Mason's Minnesota Statutes 1927. Provisions are made in section 6550 Minnesota statutes with reference to costs on appeal from awards of commissioners. It reads as follows: "The court, in its discretion, may award to the prevailing party costs and the disbursements of the appeal."

Counsel for the respondents do not contend that the Conformity Act, or the Act of August 1, 1888, requires the federal courts to adopt the Minnesota statutes with reference to the allowance of costs in condemnation proceedings. They insist that the right to tax costs herein against the government is guaranteed by a fair and equitable interpretation of the Fifth Amendment to the Constitution relating to eminent domain, and that any legislative provisions with reference to costs cannot usurp the right of the courts to determine what is "just compensation" in condemnation proceedings. Respondents cite the case of Monongahela Navigation Co. v. United States, 148 U. S. 312, 13 S. Ct. 622, 37 L. Ed. 463. On page 327 of 148 U. S., 13 S. Ct. 622, 626, 37 L. Ed. 463, Justice Brewer states: "By this legislation congress seems to have assumed the right to determine what shall be the measure of compensation. But this is a judicial, and not a legislative, question. The legislature may determine what private property is needed for public purposes; that is a question of a political and legislative character. But when the taking has been ordered, then the question of compensation is judicial. It does not rest with the public, taking the property, through congress or the legislature, its representative, to say what compensation shall be paid, or even what shall be the rule of compensation. The constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry."

That is, respondents take the position that the allowance of costs and disbursements is of the substance, and not a mere matter of procedure, and that any attempt on the part of any legislative body to interfere with the courts' inherent right to judicially determine what is just compensation, is unconstitutional. It is respondents' position, therefore, that the only assistance of the Minnesota statutes in question relating to costs is that the view of the Legislature regarding the allowance of costs should be persuasive on the courts in determining whether or not costs should be allowed as part of the just compensation due landowners whose property is taken by condemnation proceedings, and assert that they will not receive just compensation for their property unless costs, disbursements, and attorneys' fees are allowed by the court.

It seems to this court that respondents have confused the right to recover just compensation for property taken and the costs incidental thereto, the allowance of which is clearly a creature of statute. The proceeding before this court on the appeal from the award of the commissioners is on the law side. It is not an equitable proceeding. Kohl v. United States, 91 U. S. 367, 23 L. Ed. 449. No costs were allowed at common law, and without statutory provisions there would be no authority for allowance of costs in any law action. It is apparently well recognized that, in the absence of legislation by Congress, no costs can be authorized against the government.

Hughes on Federal Practice, § 5272 (1931) says: "The sovereign power not being amenable for judgment of damages or costs, without its consent, costs against the Government cannot be imposed in any suit to which it is a party, without the authority of an act of Congress, so that the rule of decisions act does not apply, nor does the conformity act give the necessary authority."

In Treat v. Farmers' Loan & Trust Co. (C. C. A.) 185 F. 760, 763, it is said: "As a sovereign cannot be sued except by his own consent, it follows that he may prescribe the conditions upon which he will be sued. The law is clear that interest and costs cannot be awarded against the United States except by legislative warrant."

In the recent case of Henkel v. Chicago, St. Paul, Minneapolis & Omaha Railway Company, 284 U. S. 444, 52 S. Ct. 223, 225, 76 L. Ed. 386, the court refused to follow the statute of Minnesota in allowance of expert witness fees, and stated: "Additional amounts paid as compensation, or fees, to expert witnesses cannot be allowed or taxed as costs in cases in the federal courts. * * * The appellant, seeking the application of the statute of Minnesota, invokes the rule that 'the laws of the several states, except where the Constitution, treaties, or statutes of the United States otherwise * * * provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply.' U. S. Code, tit. 28, § 725 (28 USCA § 725). But this provision, by its terms, is inapplicable, as the Congress has definitely prescribed its own requirement with respect to the fees of witnesses. The Congress has dealt with the subject comprehensively, and has made no exception of the fees of expert witnesses. Its legislation must be deemed controlling, and

excludes the application in the federal courts of any different state practice."

The respondents cite cases of United States v. Sargent (C. C. A.) 162 F. 81; United States v. Nahant (C. C. A.) 153 F. 520; United States v. National City Bank (C. C. A.) 281 F. 754. The Sargent Case was a proceeding by the United States for the condemnation of certain lands, and the court entered an order confirming the report of the commissioners, and provided further that the United States should pay interest on the award. Exception was taken by the government to the allowance of interest, on the ground that, in absence of stipulation to pay interest, or statute allowing interest, none can be recovered against the United States. The court, however, overruled the exception taken by the government, and allowed interest. It is quite apparent that this case does not sustain respondents' position herein with reference to allowance of costs. The court in the Sargent Case was prompted to allow interest as a part of just compensation on the theory that, when the government takes the land, the owner is deprived of the use thereof, and that interest should be allowed on the sum awarded from the date of taking until the money is paid to the landowner. That is, if the owner was deprived of the use of his land, he should have interest on the award until it is paid. In United States v. Nahant, and United States v. National City Bank, supra, costs were apparently allowed against the government in condemnation proceedings. No objection was made, however, by the government to the allowance of costs, and in its decision the court did not pass upon the propriety of such allowance.

There is no United States decision which recognizes the propriety of taxing costs against the government without legislative authority, but there are many cases that emphatically hold that costs cannot be allowed. In the case of In re Postoffice Site (C. C. A.) 210 F. 832, 835, a per curiam decision, the court brushed aside a claim for costs and interest in a condemnation proceeding with the following language: "We know of no authority for the award of costs. The award of $2,500 and the items for interest and costs are disallowed. * * *"

In the case of Carlisle v. Cooper (C. C. A.) 64 F. 472, in the syllabus it is stated: "In the absence of legislation by congress authorizing costs against the government, they cannot be imposed in any suit to which it is a party; and neither the act of June

1, 1872 (Rev. St., § 914 [28 USCA § 724]), conforming the practice of the federal courts to that of the states where they are held, nor the act of August 1, 1888, authorizing condemnation proceedings, and making similar provision as to conformity to state practice, etc., gives such authority."

In United States v. Chemical Foundation, 272 U. S. 1, 20, 47 S. Ct. 1, 8, 71 L. Ed. 131, the court used the following language:

"Before the commencement of the trial, the District Court [294 F. 300] found that it was necessary that the testimony be taken down in shorthand and transcribed, and appointed an official stenographer for that purpose; and it was ordered that his fees be ultimately taxed as a part of the costs. By another order, counsel consenting, the court directed that the expense of printing 100 copies of the transcript, to be available for use in that court and on appeal, be advanced from time to time and borne in equal amounts by the parties and form a part of the taxable costs. The decree directs that the Chemical Foundation recover from the United States the money advanced by the Foundation on account of such fees and expenses, and orders the amount to be taxed as costs in the case. The government insists that this is erroneous.

"The general rule is that, in the absence of a statute directly authorizing it, courts will not give judgment against the United States for costs or expenses. United States v. Hooe, 3 Cranch, 73, 91, 92, 2 L. Ed. 370; Shewan & Sons v. United States, 267 U. S. 86, 45 S. Ct. 238, 69 L. Ed. 527; United States v. Davis, 54 F. 147, 152, et seq., 4 C. C. A. 251. But the Foundation insists that under equity rule 50, taken with the consent of counsel and the orders, the court was authorized to direct that these items be taxed as costs and to give judgment against the United States therefor.

"Equity rule 50 in general terms provides that stenographers' fees shall be fixed by the court and taxed as costs, but it does not specify costs or judgment for money against the United States. The rule does not mention the United States and does not affect the sovereign prerogative not to pay costs. Congress alone has power to waive or qualify that immunity. But no statute authorizes the giving of judgment against the United States for these items or authorizes the Attorney General or other counsel in the case to consent to such a judgment. No such authority is necessary for the proper conduct of litigation on behalf of the United States, and there

is no ground for implying that authority. It follows that the direction for judgment against the United States for costs cannot be sustained. That part of the decree will be eliminated; and the decree, so modified, will be affirmed."

■■ The question, therefore, in these proceedings, as presented by respondents, resolves itself into this quære: Without legislation of Congress, can the courts, in interpreting and construing the portion of the Fifth Amendment to the Constitution of the United States relating to the right of eminent domain, allow costs and attorneys' fees, or either, as a part of the "just compensation" guaranteed by that section?

The Monongahela Navigation Co. v. United States, supra, relied upon by the respondents as authority for the exclusive jurisdiction in the courts to determine just compensation, states, as follows, on page 325 of 148 U. S., 13 S. Ct. 622, 626, 37 L. Ed. 463: "The language used in the fifth amendment in respect to this matter is happily chosen. The entire amendment is a series of negations, denials of right or power in the government; the last (the one in point here) being: 'Nor shall private property be taken for public use without just compensation.' The noun 'compensation,' standing by itself, carries the idea of an equivalent. Thus we speak of damages by way of compensation, or compensatory damages, as distinguished from punitive or exemplary damages; the former being the equivalent for the injury done, and the latter imposed by way of punishment. So that if the adjective 'just' had been omitted, and the provision was simply that property should not be taken without compensation, the natural import of the language would be that the compensation should be the equivalent of the property. And this is made emphatic by the adjective 'just.' There can, in view of the combination of those two words, be no doubt that the compensation must be a full and perfect equivalent for the property taken; and this just compensation, it will be noticed, is for the property, and not to the owner. Every other clause in this fifth amendment is personal. 'No person shall be held to answer for a capital, or otherwise infamous crime,' etc. Instead of continuing that form of statement, and saying that no person shall be deprived of his property without just compensation, the personal element is left out, and the 'just compensation' is to be a full equivalent for the property taken. This excludes the taking into account, as an element in the compensation, any sup-

posed benefit that the owner may receive in common with all from the public uses to which his private property is appropriated, and leaves it, to stand as a declaration, that no private property shall be appropriated to public uses unless a full and exact equivalent for it be returned to the owner."

This language would indicate that the court has in mind that, when compensation is guaranteed by the Fifth Amendment, it should be the equivalent to the property taken, and, when that has been provided, then the Constitution has been complied with.

In commenting in the abstract as to what is just, fair, and equitable, it might appear that common justice requires that an all-powerful sovereign should not be permitted to take the property of a citizen without making good all the incidental damages that the landowner may sustain. But, of course, just compensation, as guaranteed by the Constitution, is compensation for the interest of the owner in the land taken. Every equitable consideration should be given to the owner, so that he receives fair compensation for such interest, and in the case at bar the jury were summoned to hear the testimony introduced on behalf of the government and the landowners, and, without objection, the court submitted the usual instructions regarding the fair market value of the land taken, as a yardstick by which the jury should determine the "just compensation" to which the owners should be entitled. The jury's verdict represents the judicial determination of just compensation in the instant case. "Just compensation" must necessarily mean that the owner of the property shall be allowed such sum as will represent in money the reasonable market value of the land taken, and not the value of the property plus costs, expenses, and attorneys' fees that the landowners may have incurred. It is significant that even the Minnesota statutes provide no allowance for costs or witness fees, or any other disbursements incurred before the commissioners. It is only on appeal that costs may be allowed, and if the respondents' theory is correct that in every condemnation proceeding, as an inherent part thereof, the property owners should not only receive the reasonable market value of their land, but in addition, all costs and disbursements incurred, then provision should be made for the inclusion of such expenses when the commissioners file their award.

In the proceedings before the commissioners herein, the respondents were represented by attorneys, and witnesses were summoned by the government and by respondents, and lengthy proceedings were had before the commissioners in order to properly present to them the question of damages that they were required to assess. No claim for costs, however, is presented until judgment is to be entered on the jury's verdict. The principle contended for by the respondents would do violence to the very fundamentals by which damages in eminent domain proceedings are ascertained by commissioners and juries. True, the determination of just compensation is a judicial matter, but costs and disbursements are for legislative action just as allowance for all costs and disbursements is provided for in other actions at law. The mere fact that just compensation should be determined on equitable principles, does not make this an action in equity. It does not seem to the court that there is any marked distinction between the "inalienable rights of freemen" where lands are taken for public use, and the taking of personal property by conversion, for instance. Justice demands that every person, whose rights have been wrongfully invaded, shall have complete monetary compensation. Nevertheless, in all law actions, costs of litigation are not considered as inherent to complete and just compensation unless provided for by legislative decree.

Text-writers are agreed that no costs can be allowed as against the condemnor in condemnation proceedings, unless supported by legislative sanction. Lewis, on Eminent Domain (3d Ed.) § 813, says: "As stated in the last section, the doctrine of the Courts has generally been that costs could not be awarded in condemnation proceedings in the absence of a statute authorizing them, and it is the prevailing doctrine that the general statutory provisions in regard to costs do not apply to condemnation proceedings."

Nichols, on Eminent Domain, § 343, says: "It is universally held that the owner should not be obliged to pay the costs of the proceedings brought for the purpose of taking his land and assessing compensation. But in the absence of a special statute applicable to eminent domain proceedings, it is generally held that costs cannot be awarded to either party. Costs were not allowed at common law and a statute must be sweeping enough to include all Court proceedings if it is to be construed to include all land takings."

Continuing, the author says in the same section: "In accordance with the general principles of law under which a sovereign is exempt from the payment of costs, neither a

state nor the United States is liable for costs when it seeks to take land by eminent domain, unless such liability is expressly created by statute."

Ruling Case Law, vol. 10, p. 193, § 166, states: "Costs. When the state itself takes land by eminent domain, it will not be held liable for costs in any event unless expressly made so by statute. * * * " Deneen v. Unverzagt, 225 Ill. 378, 80 N. E. 321, 8 Ann. Cas. 396.

The following cases also sustain the government's position: United States v. Verdier, 164 U. S. 213, 17 S. Ct. 42, 41 L. Ed. 407; United States v. Thompson, 98 U. S. 486, 25 L. Ed. 194; De Groot v. United States, 5 Wall. 419, 18 L. Ed. 700; The Antelope, 12 Wheat. 546, 6 L. Ed. 723; Fairmont Creamery Co. v. Minnesota, 275 U. S. 70, 48 S. Ct. 97, 72 L. Ed. 168.

There has been language used in some state decisions where costs were allowed by statute which would indicate that the courts concluded that costs were rightfully included as part of "just compensation," and that the landowners could not be made whole without the allowance of the costs which were necessarily incurred in obtaining "just compensation," and that if costs were deducted by nonallowance, then the landowner would not receive complete compensation as contemplated by the Constitution. But, of course, such deductions cannot be binding in these proceedings, where costs are asked as against the United States. No state can enlarge or diminish the rights of the United States, nor can any state prescribe the manner in which the right of eminent domain must be exercised. See Kohl v. United States, supra. If costs and attorneys' fees are to be allowed as part of just compensation without statutory sanction, then our whole theory of instructions to commissioners and juries in determining damages in eminent domain must be revolutionized. It seems to the court far more reasonable to hold that the constitutional guaranties are complied with when the landowner is given the fair and reasonable market value of his land; and if, in the interest of justice, further allowance should be made by way of costs incurred, then that is a matter for the Legislature, and not for the courts. The array of statutes in different states that specially provide for the allowance of costs in condemnation proceedings is strongly persuasive that there has been no assumption of judicial function and authority by the various Legislatures in assuming that it was incumbent upon them to provide for costs in such proceedings. Respondents have, with great diligence, classified and digested the many state statutes providing for costs in condemnation proceedings in support of their theory that just compensation demands the allowance of costs. However, all these states have, in effect, directed or made it discretionary for the courts to allow costs, and have thereby recognized the legislative authority therein. When one reflects that costs in all law actions are solely creatures of statute, and that the common law did not recognize the right of any litigant to recover costs, and that under no circumstances can costs be taxed against the United States without its consent, it becomes quite apparent that, in condemnation proceedings, the constitutional framers did not have in mind the allowance of any costs when they used the term "just compensation," but merely inculcated into the bill of rights a check on the sovereign in the exercise of right of eminent domain, so that all citizens would be guaranteed the reasonable and fair market value of the property taken. No good reason appears to the court why any distinction should be made between the right of property owners in condemnation proceedings, and the other litigants that come into our courts for redress when property rights have been violated.

The fallacy of respondents' position must be apparent. They have been allowed just compensation for their property by the jury under instructions of the court, concerning which there was no objection, and they now seek to recover costs against the government, without statutory authority, under the guise of further "just compensation" for their property.

The objections of the government to the motion for taxation of costs will be sustained. It is so ordered.