AUSTIN D. MACRAE & others *vs.* SELECTMEN OF CONCORD & others.

Middlesex.    February 5, 1936. — January 25, 1937.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Municipal Corporations,* Municipal electric plant, Powers in general.
*Equity Jurisdiction,* Petition by ten taxable inhabitants, Laches.
*Equity Pleading and Practice,* Parties. *Statute,* Construction. *Words,*
"Plant."

It appearing that at least ten of sixteen petitioners in a taxpayers' petition under G. L. (Ter. Ed.) c. 40, § 53, acted in good faith, it was immaterial that many of them were unfamiliar with the exact nature of the proceeding.

A taxpayers' petition under G. L. (Ter. Ed.) c. 40, § 53, to enjoin a municipality from engaging in a certain retail business was not barred by laches although four years had elapsed since the retail business was established.

Municipal corporations in Massachusetts can exercise only those powers and perform only those duties which are expressly conferred by statute or necessarily implied either from those expressly conferred or from undoubted municipal rights or privileges. Per RUGG, C.J.

A municipal corporation has no power to establish and operate a municipal electric plant except by statute.

Statutes conferring powers upon municipalities, especially statutes enabling them to enter into commercial activities, have always been given a strict construction.

The provisions of G. L. (Ter. Ed.) c. 164, §§ 34–69, did not authorize a municipal corporation having a municipal electric plant to conduct the business of selling household electrical appliances at retail or to do free installation and repair work in connection therewith for consumers using power and light from its plant.

PETITION by taxpayers under G. L. (Ter. Ed.) c. 40, § 53, filed in the Superior Court on May 22, 1935.

Upon confirmation of a master's report, a final decree dismissing the petition was entered by order of *Morton*, J. The petitioners appealed.

*R. E. Goodwin*, (*F. B. Wallis* & *R. M. Nichols* with him,) for the petitioners.

*H. R. Bygrave*, for the respondents.

RUGG, C.J.    This is a petition by citizens of Concord under G. L. (Ter. Ed.) c. 40, § 53, against the selectmen, the members of the municipal light board, the treasurer, and the manager of the municipal light plant, to enjoin them, as officers of the town of Concord, from conducting the business of selling at retail various kinds of household electrical appliances and from doing free installation and repair work for consumers using power and light supplied by the municipal light plant.

The case was referred to a master, whose report has been confirmed.    By that report these facts are disclosed.    The municipal light plant of Concord is operated under the authority of G. L. (Ter. Ed.) c. 164.    It generates no power but buys all its electrical energy of the Edison Electric Company of Boston at a rate so computed that the larger the amount of energy used the smaller the cost per unit, and the more constant the demand the smaller the cost per unit.    In 1931, the municipal light board, finding that the municipal light plant had experienced a reduction in consumption of its product through replacement of electric ranges by gas stoves, due to competition of the Boston Consolidated Gas Company in Concord, undertook a "load building program" through the sale of appliances.    A store was established, where a retail business in the sale of electrical appliances was conducted.    This business consisted in buying outright for cash from manufacturers and others and reselling to the public.    This store was the regular place for the transaction of all business of the municipal light department.    There was carried an inventory of large appliances comprising refrigerators, ranges and water heaters, and also a supply of smaller appliances such as percolators, flatirons, toasters, curling irons, plugs, switches, cord connections, bulbs, and the like.    A salesman was em-

ployed, who also had other duties in connection with keeping accounts. The larger appliances were sold on liberal terms and the municipal light plant did the installation work free of charge. Directions were given that no sales of any appliances be made except to residents of Concord. This order has not been closely observed where a customer pays cash, but in general has been well observed as to the larger appliances, although there have been some infractions. The result of the merchandising and jobbing operations for the years 1931 to 1934 was a substantial loss in each year, although for the first five months of 1935 a small profit was shown. The municipal light plant as a whole has made a profit in each of the last five years. During the last three years the average monthly consumption per customer has increased due to the use of appliances in homes.

A preliminary question is raised as to the standing of the petitioners. They were sixteen in number. All were taxable inhabitants of Concord. Although many of them apparently were unfamiliar with the exact nature of this proceeding, we are of opinion that at least ten of them acted in good faith as petitioners. They have not been guilty of laches. There is no lack of sufficient parties as petitioners. The case at bar is distinguishable from *Conners* v. *Lowell*, 246 Mass. 279.

Cities and towns in this Commonwealth differ in their nature from trading, manufacturing or public service corporations, and even from municipal corporations outside of New England. "They are created primarily for political purposes and the convenient administration of government. They possess few of the characteristics which distinguish the ordinary corporation. *Bloomfield* v. *Charter Oak Bank*, 121 U. S. 121, 129." *Donohue* v. *Newburyport*, 211 Mass. 561, 566. They "can exercise those powers and perform those duties, only, which are expressly conferred by statute or necessarily implied from those expressly conferred or from undoubted municipal rights or privileges." *White* v. *Treasurer of Wayland*, 273 Mass. 468, 470. The right to erect, maintain and operate electric plants is not one of the general powers conferred by implication of law upon munic-

ipalities in this Commonwealth. *Opinion of the Justices*, 150
Mass. 592. *Spaulding* v. *Peabody*, 153 Mass. 129. *Whiting*
v. *Mayor of Holyoke*, 272 Mass. 116, 118, 119. The develop-
ment of electricity by a municipality for light, heat and
power for general use is a function which under the Constitu-
tion can be conferred by an appropriate statute. It is a
public use. *Barnes* v. *Peck*, 283 Mass. 618, 629. *Citizens'*
*Gas Light Co.* v. *Wakefield*, 161 Mass. 432, 439. In this
Commonwealth statutes as to powers conferred upon cities
and towns have always been given a strict construction.
*Spaulding* v. *Peabody*, 153 Mass. 129, 135. *Attorney General*
v. *Lowell*, 246 Mass. 312, 320. See *Opinion of the Justices*,
155 Mass. 598; 182 Mass. 605. This principle applies with
special force to statutes enabling municipalities to enter into
commercial activity. It was said in *Donohue* v. *Newbury-*
*port*, 211 Mass. 561, 567: "where cities and towns are author-
ized to enter the field of business enterprises, like the manu-
facture of gas and electricity, they do it not under the laws
relating to private corporations . . . but under" special
statutory provisions.

The municipal light plant of Concord is established and
operated under G. L. (Ter. Ed.) c. 164, §§ 34–69, inclusive.
These sections confer in terms no power to engage in the re-
tail sale and installation of household electrical appliances.
The question is whether such power can be inferred from
other provisions. The general enabling section (§ 34) author-
izes a municipality to "construct, purchase or lease, and
maintain within its limits, one or more plants for the manu-
facture or distribution of gas or electricity for municipal use
or for the use of its inhabitants. Such plants may include
suitable land, structures and machinery and other apparatus
and appliances for manufacturing, using and distributing
gas or electricity for said purposes." It is manifest that
the dominant features of authorization relate to the plant
for manufacture and distribution of electricity. The word
"plants" in this context does not lend itself to a meaning
broad enough to include a retail business and a stock in trade
in household electrical mechanisms title to which is to be
transferred to the purchaser. The word "appliances" in its

connection in this section naturally is confined to processes of manufacture and distribution. It does not extend to the establishment of a mercantile business for trading in the household furniture not permanently used by the municipality, which in the progress of the science of electricity may be utilized by householders in consuming electricity. It is apparent from § 41 that the "appliances" to which reference has been made relate to those necessary to distribute electricity. The statute in § 56 contains detailed provisions as to the duties of a manager of municipal lighting, but no reference is made to merchandising of chattels at retail. No officer or employee is designated to have charge of the kind and quantity of inventory or stock in trade to be carried, the prices to be charged, the determination of matters of credit, and other questions inherent and highly important in the conduct of a retail business. There is no reference in § 57, touching income and expenses, which can by fair interpretation be held to govern retail sales and installation of apparatus in homes. Provision is made in § 58A to protect the municipality against credit losses incurred in the sale of electricity. No provision is made for losses resulting from sales of appliances on credit. This in connection with other terms of the statute carries the implication that dealing in appliances in retail trade by the municipality was not contemplated by those who framed the statute.

The sale at retail of electrical appliances and the installation of electrical fittings are a separate business from the supply of electrical energy. There is no inherent and necessary connection between the two.

The contention cannot be supported that, since private companies conduct this retail business as an adjunct of the business of supplying electricity, a municipality has equal power. Private corporations may undertake whatever transactions are fairly incidental or auxiliary to their main business and necessary or expedient in the protection and management of their property. *Teele* v. *Rockport Granite Co.* 224 Mass. 20, 25. *American Surety Co.* v. *14 Canal Street, Inc.* 276 Mass. 119, 125. As already pointed out, statutes conferring powers upon municipalities are narrowly

interpreted and do not permit such extension of interpretation.

For these reasons and on the authorities already reviewed, we are of opinion that the conduct of the business of selling electrical appliances as shown by this record is beyond the power conferred upon the town by the statute. *Keen* v. *Waycross,* 101 Ga. 588. *Attorney General* v. *Leicester Corp.* [1910] 2 Ch. 359, 373. *Attorney General* v. *County of London Electric Supply Co. Ltd.* [1926] Ch. 542, 557. There are authorities to the contrary in other jurisdictions. *Andrews* v. *South Haven,* 187 Mich. 294. *Standard Oil Co.* v. *Lincoln,* 114 Neb. 243; affirmed 275 U. S. 504. *Mayfield* v. *Phipps,* 203 Ky. 532. *Milligan* v. *Miles City,* 51 Mont. 374. *Hamler* v. *Jacksonville,* 97 Fla. 807, 812. Those decisions need not be reviewed. They are founded upon theories as to the business functions of municipal corporations diverse from those established in this Commonwealth by the decisions already cited.

The interpretation given to the governing provisions of G. L. (Ter. Ed.) c. 164 renders it unnecessary to discuss other questions argued. The decree dismissing the petition must be reversed. Upon the facts set forth in the master's report the petitioners are entitled to a decree in their favor.

*Ordered accordingly.*