The first action, entitled as above, was begun in the Superior Court of Wake County, on 1 February, 1924. Plaintiff alleged that defendant, R. G. Allen, had breached a contract for the purchase and sale of a lot of land, situate on Fayetteville Street, in the city of Raleigh, entered into by plaintiff and said defendant, in writing, dated 13 January, 1920, and extended from time to time, by mutual agreements, to 1 January, 1924, said extension agreements being in writing, signed by the parties, and setting forth the terms and conditions upon which same were entered into; and that plaintiff had been damaged by breach of said contract by defendant in the sum of $6,279.20. Plaintiff demanded judgment that he recover of defendant, R. G. Allen, and his codefendants, sureties on his bond, as alleged in the complaint, the said sum as damages.
Defendants, in their answer, filed on 8 March, 1924, admitted the execution of the contract and of the extension agreements, and also of the bond, as alleged. Defendants allege that said contract is still in full force and effect; that R. G. Allen had paid $2,000 on the purchase price of said lot, leaving a balance due, after said payments, of $43,000; that during the existence of said contract, plaintiff and said defendant had had dealings with each other, with respect to the lot, the subject-matter of said contract, as provided in the extension agreements, involving rents and income arising therefrom, and expenditures for taxes, insurance and repairs made thereon, and that defendants were ready, willing and able to pay the balance due on the purchase price for said lot when same had been ascertained and determined by an accounting between the parties. Defendants prayed that plaintiff be required to execute deed conveying to R. G. Allen, or his assigns, the said lot upon payment by defendants to plaintiff of the balance due on the purchase money.
The second action, entitled as above, was also begun in the Superior Court of Wake County, on 12 September, 1924. The plaintiff, Capital *Page 436 
Realty Company, alleged that on 28 June, 1923, R. G. Allen had assigned to plaintiff, for a valuable consideration, all his interest in the contract between the said R. G. Allen and defendant, John W. Crawford, executor and trustee under the will of J. H. Crawford, deceased, relative to said lot, and had conveyed to plaintiff all his right, title and interest in and to said lot by virtue of said contract, and that said assignment and conveyance had been duly registered on said date; that said contract was in full force and effect, and that plaintiff was ready, willing and able to pay the balance due on the purchase price for said lot in accordance with said contract; that in June, 1924, the said Crawford undertook to lease the said lot for a term of ten years to his codefendants, Louis Samuels and Alexander Levy; that said Samuels and Levy had notice of the contract under which plaintiff claimed and took the said lease, subject to the rights of plaintiff in and to said lot; that said Samuels and Levy were about to make certain repairs to and alterations in the building on the said lot, which would materially affect the value thereof. Plaintiff prayed for an order enjoining and restraining defendants from making any repairs to or alterations in said building.
Defendants in their answers deny that plaintiff has any right, title or interest in or to said lot, alleging that R. G. Allen had, prior to the date of the lease, forfeited all rights under the contract by breaches of the same, and that plaintiff acquired no rights with respect to the said lot by the alleged assignment or conveyance to it from R. G. Allen. Defendants Samuels and Levy deny that they had any notice, actual or constructive, of any claim of plaintiff to said lot, and both defendants pray that the prayer of plaintiff be denied, and that said lease be declared in all respects valid and binding.
By consent of all parties, these two actions were consolidated for the purpose of the hearing. A trial by jury was duly waived, and the judge, by consent, found the facts from the evidence offered at the hearing. The findings of fact and conclusions of law are set out in the record. The judge, upon an accounting between John W. Crawford, executor and trustee, and R. G. Allen, finds that the balance due on the purchase price for said lot, on 1 January, 1924, is $50,881.24, and orders, adjudges and decrees (1) that Capital Realty Company shall, on or before the date fixed in the decree, pay into the office of the clerk of the Superior Court of Wake County the sum of $50,881.24, with interest from 1 January, 1924, less the sum of $333.33 for each and every month from and including January, 1924, until said sum of money is paid, with interest on said monthly payments from the last day of each month; (2) that upon payment of said sum of money into the said office, John W. Crawford, executor and trustee, shall execute a *Page 437 
good and sufficient deed, conveying said lot in fee simple to Capital Realty Company or its assigns; (3) that the lease from John W. Crawford, executor and trustee, to Louis Samuels and Alexander Levy be and the same is canceled as against the rights of Capital Realty Company; (4) that John W. Crawford, executor and trustee, and said Samuels and Levy, shall deliver possession of said lot to Capital Realty Company or its assigns upon payment of said sum of money into the clerk's office, as required in the judgment and decree.
John W. Crawford, executor and trustee, and Louis Samuels except to said judgment and decree, and appealed therefrom to the Supreme Court, assigning errors.
The questions presented on this appeal by John W. Crawford, executor and trustee, as stated by his counsel in the brief filed in this Court, in his behalf, are:
1. Whether the contract between Crawford, executor and trustee, and R. G. Allen is sufficient to entitle R. G. Allen, or his assigns to the equitable remedy of specific performance.
2. If so, whether by the terms of the said contract, all rights thereunder, in or to the said contract or the lot, the subject-matter thereof, have been forfeited by R. G. Allen by his failure to perform and comply with the said terms.
3. If so, whether Crawford, executor and trustee, upon the facts found by the judge, is entitled to judgment against R. G. Allen and the sureties on his bond for damages, as alleged by him.
These questions are fairly presented by the exceptions and assignments of error, appearing in the statement of the case on appeal and discussed in appellant's brief. Answers to these questions will be determinative of this appeal.
The judge finds that "the contract of sale and purchase of the Crawford store in controversy was entered into between R. G. Allen and John W. Crawford, executor and trustee, on 13 January, 1920, and said contract was duly recorded in the office of the register of deeds of Wake County; that the date for payment of the balance of the purchase money was extended from time to time to 1 January, 1924, as per the agreements attached to the pleadings, the original contract being otherwise amended as appears in said agreements. *Page 438 
The evidence upon which these findings of fact are made is the contract and agreements, all of which are in writing and signed by both Crawford, executor and trustee, and R. G. Allen. It is admitted in the pleadings that John W. Crawford, executor and trustee, had authority to enter into the various contracts with the defendant. The original contract dated 13 January, 1920, recites that the agreement is made "subject to the order of the court to be hereafter obtained." It is provided in the contract dated 6 July, 1920, that "a controversy without action, under our statutes, shall be submitted to the Superior Court of Wake County, to adjudicate the title to a certain lot of land in Raleigh, North Carolina, between Fayetteville and Salisbury streets, belonging to the estate of John H. Crawford, deceased." It is alleged and admitted that the title of John W. Crawford, executor and trustee, has been favorably adjudicated. Thus the only condition precedent to the full, binding effect of the said contract has been complied with, and the parties thereto are vested with all the rights and subject to all the obligations set out therein. The contract is no longer conditional; the mutual rights and obligations of the parties are to be determined by the contract, which is in writing, signed by them. The contract was in full force and effect on 1 January, 1924, unless R. G. Allen had forfeited his rights thereunder by failure to perform and comply with the terms thereof.
Crawford, executor and trustee, contends that the contracts are not sufficient to entitle R. G. Allen or his assigns to a decree of specific performance, for that there is a want of mutuality of obligation in said contracts. This contention cannot be sustained. Crawford, executor and trustee, is by the express terms of the contract, under obligation to sell and convey, and Allen to purchase and pay for the lot. Neither has an option, each is entitled under the contract to rights, which are not dependent upon any further act of the other; these rights are enforceable by either as against the other. The contracts are bilateral, and not unilateral. It is a contract of purchase and sale. As said by JusticeStacy, of the contract involved in Howell v. Pate, 181 N.C. 117: "The agreement contains the necessary elements of an executory contract, to wit, mutuality of obligation and remedy." Davis v. Martin, 146 N.C. 281.Pollock v. Brookover, 6 L.R.A. (N.S.), 403; Rucker v. Sanders,182 N.C. 607; See Solomon v. Sewerage Co., 142 N.C. 439. Bispham's Equity, p. 377.
Nor can the contention that the contract is not enforceable by a decree of specific performance, because it provides for the payment, upon its breach by R. G. Allen, vendee, to Crawford, executor and trustee, vendor, if liquidated damages, be sustained. In the contract dated 13 January, 1920, Crawford, executor and trustee, acknowledges *Page 439 
the receipt from R. G. Allen of five hundred, "to bind the trade." It is therein provided that in the event Allen refuses to pay the purchase price upon the conveyance of title by Crawford, "the said sum of five hundred dollars, given to bind the trade, is to be regarded as liquidated damages to cover the expenses that Crawford may have been put to, but that upon said Allen's performance of his part of the contract, the said five hundred dollars is to be allowed as a credit on the purchase price." In the contract, dated 6 July, 1920, it is agreed that upon default by Allen in the payment of the purchase price, "then said Allen shall pay the said Crawford, executor and trustee, the sum of one thousand five hundred dollars as liquidated damages for the breach of his contract." Upon the execution of this contract Allen deposited with a bank designated by Crawford, the sum of one thousand five hundred dollars, to be held in trust for said purpose. In the contract dated 1 April, 1921, providing, primarily, for an extension of the time for payment of the purchase price by Allen, it is recited that the balance due on the purchase price is $43,000, "the said sum being the original purchase price ($45,000) less the sum of two thousand dollars which Allen has paid thereon, which includes fifteen hundred dollars paid by Allen just before the expiration of this contract. In the last agreement, dated 16 December, 1922, extending time of payment to 1 January, 1924, the balance due on the purchase price is stated as $43,000, it being agreed that the deposit of $1,500 "is to be continued to be held in trust as liquidated damages." In their brief, attorneys for Crawford concede that these sums should be deducted from the amount which he demands as damages.
Whether, notwithstanding the reference, in the contracts, to the five hundred and the fifteen hundred dollars as liquidated damages, in view of the application of these sums by the parties to the contract as payments on the purchase price, a court, exercising equitable jurisdiction, considering the substance and not the form, will regard them as deposits to cover liquidated damages, need not now be determined. A court of equity, which does not favor forfeitures, and will not enforce penalties, but seeks to do justice in accordance with the rights of both parties, as determined by an enlightened conscience, will not be swift to sustain an undertaking to pay liquidated damages, where there has been no injury and no loss. Appellant's insistence that he ought not to be decreed to convey this property to Allen or his assigns, because it has greatly enhanced in value during the pendency of the contract relations of the parties, is hardly consistent with his demand for liquidated damages, because Allen failed to pay him the purchase price agreed upon. If he could sustain his contentions in this action, and thus be relieved of his obligations under the contract, he would suffer no loss, *Page 440 
for he now contends that the property which he sold in 1920, for $45,000 is worth $75,000 or more.
In Gordon v. Brown, 39 N.C. 399, Ruffin, C. J., says: "It is true, as the defendant says, the penalty was the law of their contract, limiting the sum which could have been recovered from the defendant in an action of debt. But equity disregards penalties. If the penalty here had been ten times as much, the defendant would have then thought it reasonable and equitable, that he should be relieved from it by performance of the act, upon the nonperformance of which the penalty accrued by strict law. So the other side is not restricted to his legal remedy by an action on the penalty, but may claim an execution of the contract, as it is understood by the Court; that is, as a stipulation, without reference to the penalty, to do the several things stated in the condition." In that case the value of the property for the recovery of which the action was brought was much larger than the penal sum of the bond. The bond was for the return of the property, and the obligor contended that, it being found that he could not return the property, the recovery by the obligee was limited to the amount of the bond; the Court held that the obligation of the defendant was to return the property, and not primarily to pay the penalty of the bond. There the obligor was required to perform his contract by payment of the full value of the property and was not relieved by his obligation to do so by payment of the penal sum of his bond. Here, the vendor is entitled only to his actual damages, which could be readily ascertained, in accordance with a well established principle of law, fixing the measure of his damages, notwithstanding a provision in the contract for payment of a sum of money, arbitrarily fixed, as liquidated damages. Even if the provision in the contract, relative to liquidated damages is enforceable, it does not affect the equity of R. G. Allen or his assigns to specific performance. 36 Cyc., 571. It does not destroy the mutuality of obligation, for R. G. Allen would not be relieved of his primary obligation to purchase and upon conveyance to him of the lot, to pay the purchase price, by the payment of the sums, called liquidated damages. Nor does the provision affect Allen's right to enforcement of the obligation of Crawford, executor and trustee. See Fry's Specific Performance, sec. 142 et seq.
A full and careful consideration of the various contracts and agreements between the parties does not disclose that "time was of the essence of the contract," although there is a recital to that effect in the contract dated 6 July, 1920. From and after that day, it is manifest that neither of the parties so regarded it. Allen assumed possession of the property on 6 July, 1920, and thereafter of the collection of the rents and the payment of all expenses of maintaining it. He indemnified *Page 441 
Crawford, executor and trustee, from any loss that might be caused by fluctuations in the price of Liberty bonds, in which Crawford intended to invest the proceeds of the sale of the property, and this he is required to do by the judgment and decree of his Honor. He guaranteed to Crawford a stipulated monthly rental for the property. On 1 April, 1921, he renewed his obligation with respect to the Liberty bonds, and "in lieu of interest and also to compensate Crawford, executor and trustee, for trouble and expense," he agreed to pay a sum equaling 10 per cent per annum of $43,000, in equal monthly installments, and that he is required to do by the judgment and decree. On 7 November, 1921, he gave bond, in the sum of $10,000, conditioned for the performance by him of the terms and stipulations provided in the former agreements or any agreements for extension that might thereafter be made from time to time.
"It is the general doctrine in equity, in considering the rights of vendor and vendee under a contract of bargain and sale, that time is not of the essence of the contract. In cases in which it is seen really to be essential — that is, where it must have been understood by the parties at the time of the contract — that events would probably happen in which interest would not be a compensation because the title to the property or its value might be greatly affected by those events, and one of them holds back until the contemplated contingency happened, that person cannot apply to enforce the contract which he has violated, and violated in bad faith, and as to a main ingredient of the bargain." Ruffin,C. J., in Falls v. Carpenter, 21 N.C. p. 278. Even if time was deemed by the parties as a material element in the contract, on 6 July, 1920, the parties, by their subsequent conduct, could waive it. The extension of time for performance of the contract by Allen results in Crawford, executor and trustee, receiving 10 per centum per annum of the purchase price, rather than the small returns from Liberty bonds while he was guaranteed against loss by fluctuations in the price of the bonds.
The relation of Crawford, executor and trustee, and R. G. Allen, with respect to this lot of land, was that of vendor and vendee. It has been repeatedly held that this relation is substantially that subsisting between a mortgagor and mortgagee, and that it is governed, with respect to their mutual and reciprocal rights and duties, by the same general rules. Ellisv. Hussey, 66 N.C. 501; Jones v. Boyd, 80 N.C. 258; Killebrew v. Hines,104 N.C. 182; Allen v. Taylor, 96 N.C. 37; Bank v. Pearson, 119 N.C. 494.
We must therefore hold that on 1 January, 1924, the contract on its face was valid and binding, and that each party thereto was entitled to have the same enforced by a decree of specific performance, unless by some act of default he had forfeited his rights to this equitable remedy. *Page 442 
"It is established in this jurisdiction that, in the absence of fraud, mistake, undue influence, or oppression, a binding contract to convey land will be specifically enforced by the court." Flowe v. Hartwick,167 N.C. 448; Bispham's Eq., sec. 364. Equitable defenses must be specifically pleaded; otherwise, they cannot be proved. Goodman v. Robbins,180 N.C. 239; Harper v. Battle, 180 N.C. 375. In the last case cited ChiefJustice Hoke says that when the right to specific performance is properly established, it must be enforced as the parties have made it, or as far as practicable under existent circumstances.
Upon the evidence, and the facts found therefrom, the court was of the opinion, and held, "that the contract had not been forfeited or abandoned in 1923, but that it was in full force on 1 January, 1924, and that the failure of the Capital Realty Company (assignee of R. G. Allen) to tender the balance of the purchase money on 1 January, 1924, did not work a forfeiture of the contract of sale, in view of the claim of Crawford, executor and trustee, on 1 January, 1924, of the prior forfeiture of said contract, and his denial of said contract and the claim by him of an excessive amount (even if the contract was in force) and the failure of Crawford to tender a deed."
The judge found as a fact that the Capital Realty Company (assignee of R. G. Allen) is ready, able and willing to pay the balance of the purchase money.
The failure of R. G. Allen, in accordance with his agreement, to pay the monthly installments of $358.33 from 1 March, 1923, to 1 January, 1924, making a total, with interest, of $3,681.96, as one of the considerations for the extension granted on 1 April, 1921, did not work a forfeiture of his rights under the contract, nor make the extension agreement void. His Honor deducted the total of the rents collected by Crawford during that period, and included the balance, to wit, $1,412.35, in the amount which he requires the Capital Realty Company (assignee of R. G. Allen) to pay. His Honor also includes in said amount all sums paid by Crawford during that period for taxes, insurance and repairs on the property, amounting to $1,392.74.
The judge further found that the difference between the price of Liberty bonds which could have been bought by Crawford, executor and trustee, on 6 July, 1920, and on 1 January, 1924, is $5,076.15, and this amount he also requires Capital Realty Company to pay.
The holding of his Honor upon this phase of the case, and the inclusion of these items in the amount which he requires the vendee to pay, is fully supported by well-established principles of equity, and meets the requirements of justice.
"The doctrine is fundamental that either of the parties seeking a specific performance against the other must show, as a condition precedent *Page 443 
to his obtaining the remedy that he has done, or offered to do, or is then ready and willing to do, all the essential and material acts required of him by the agreement at the time of commencing the suit, and also that he is ready and willing to do all such acts as shall be required of him in the specific execution of the contract according to the terms." Pomeroy's Eq. Jurisprudence (3 ed.), sec. 1407.
In Hudson v. Cozart, 179 N.C. 247, specific performance was denied because it was neither averred nor proved that plaintiff could or would perform the stipulation in the contract, which was the chief consideration for its execution by defendants.
Crawford, executor and trustee, having granted to R. G. Allen an extension of time for payment of the balance of the purchase price to 1 January, 1924, the failure of Allen to pay the rent, taxes and insurance, and to pay for the repairs on the building, did not work a forfeiture of his rights under the contract or the extension agreement. The agreement of Allen to make these payments were not conditions upon which the extension was granted, but covenants to be thereafter performed by him. He was liable in damages for breaches of his covenants, but such breaches did not affect his rights under the contract; so that, on 1 January, 1924, the contract was in full force and effect. Crawford, executor and trustee, was under obligation to convey, and Allen (or his assignee) was under obligation to pay the balance due, upon an accounting, on the purchase price of the lot.
The exact amount due on the purchase money on 1 January, 1924, could not be determined until an accounting had been had. The Capital Realty Company, assignee of R. G. Allen, on said day, requested the accounting, and, the judge finds, was ready, willing and able, as it still is, to pay the said amount. Crawford, executor and trustee, denied his obligation on the contract, and declined to offer compliance with same by tendering deed. He will not now be relieved upon his contention that the Capital Realty Company did not strictly comply with the contract. "One of the reasons why the remedy of specific performance was introduced in equity was because at law the plaintiff is obliged to show on his part precise compliance with all the terms of the agreement, whereas chancery would sometimes afford relief, although he was unable to prove his exact fulfillment. Courts of equity grant this relief by two methods, viz., one by decreeing performance with compensation for defects, and the other by giving time for the performance of the agreement." Bispham's Eq., sec. 488.
The first two questions presented by Crawford, executor and trustee, having thus been determined in the negative, it becomes unnecessary to consider the third question. The decree as to him is approved and the judgment affirmed. *Page 444 
The judge finds that Samuels and Levy took the lease from Crawford, executor and trustee, with full notice of the rights of the Capital Realty Company, and adjudges that said lease is invalid and should be canceled as to said Capital Realty Company. To this finding, appellant, Samuels, excepted and assigns as error the conclusion of law on which this portion of the judgment is based. The assignment of error is not sustained.
The contract between Crawford, executor and trustee, and R. G. Allen, was duly recorded in Wake County on 13 January, 1920. The assignment and conveyance by R. G. Allen to the Capital Realty Company was duly recorded in said county on 28 June, 1923. The lease from Crawford, executor and trustee, to Samuels and Levy was executed in June and recorded on 18 July, 1924. Appellant, Samuels, therefore, had constructive notice, at least, of the rights of the Capital Realty Company and of its assignor, R. G. Allen, when he and Levy took the lease. Such rights as they acquired in and to the lot were subject to the rights of the Capital Realty Company, under said recorded contracts. The law as to lis pendens, so fully and interestingly discussed in the brief filed by counsel for appellant, does not necessarily apply.
The contention of both appellants that the Superior Court of Wake County is without jurisdiction, is not sustained by any facts appearing in the record. There are no allegations in the pleadings in either case, and no finding of fact by the judge upon which to base this contention. It is admitted that Crawford, executor and trustee, had authority to make the contracts; that his title had been favorably adjudicated by the court. It cannot now be contended that Crawford, executor and trustee, was without authority to extend the time for the payment by R. G. Allen of the purchase money, certainly in the absence of evidence supporting the contention. It appears from his report, filed as late as 21 February, 1924, in the Superior Court of Harnett County, that he had granted extension to 1 January, 1924, and that the court was notified of such extension. The first action, begun on 1 February, 1924, against R. G. Allen and the sureties on his bond, given pursuant to the agreement for extension, dated 16 December, 1922, was founded upon the allegation by Crawford, executor and trustee, that the contract had been extended to 1 January, 1924. Appellant, Samuels, admits in his answer that on 13 January, 1920, J. W. Crawford, executor and trustee, under the will of J. H. Crawford, deceased, had power and authority to sell and convey the lot of land, the subject-matter of this action.
The findings of fact made by the judge are supported by competent evidence; his conclusions of law are correct, and the judgment and decree are
Affirmed. *Page 445