ALEX WEINSTEIN AND BENJAMIN WEINSTEIN v. JOHN W. GRIFFIN
AND DONALD F. WILLIAMS.

(Filed 24 November, 1954.)

**1. Damages § 1d—**

While liquidated damages which are in the nature of a penalty are not favored, where the liquidated damages as fixed in the contract are not less favorable to defendant than the applicable rule of law would impose, the formula for the liquidation of damages as fixed in the contract may be applied.

**2. Landlord and Tenant § 29—**

Where the evidence establishes that plaintiff landlords received possession of the leased premises prior to the expiration of the renewal term, an instruction to the effect that if the jury found that defendant lessees had breached the agreement, to award damages for the full amount of the rent for the renewal period, is error. Defendants are entitled to an instruction applying the provisions of the lease for liquidated damages by subtracting from the contract rental the amount of the reasonable rental value for the unexpired term after possession by lessors, or instruction on lessors' duty to exercise due diligence to relet the property and thus minimize the loss.

**3. Same—Where breach of lease is in controversy under the evidence, court should submit question of breach to the jury.**

Where, in lessors' action to recover the rent for the yearly renewal in accordance with an extension executed by lessees in conformity with the original lease, defendant lessees claim they surrendered possession of the premises with lessors' approval the day the original lease expired, and that, therefore, there was no breach of the lease, and lessors, while contending that lessees breached the agreement by failure to pay rent during the extension, admit that they re-entered possession during the extension period, the court should submit to the jury the question whether the contract was breached, and, if so, when such breach occurred, and should submit with sufficient explicitness defendant lessees' contention and evidence with respect to agreement of lessors to release lessees of their obligation under the lease and renewal thereof.

APPEAL by defendants from *Stevens, J.,* March Civil Term, 1954, WAKE.

In substance, the plaintiffs allege that on 6 August, 1951, they entered into a written contract, leasing to the defendants a certain lot known as the Hobby property on the corner of Fayetteville and South Streets in the City of Raleigh. The lease was for a period of one year beginning with the delivery of possession on 15 August, 1951, subject to a renewal at the option of the defendants for additional one-year periods not to exceed four renewals, provided notice of intention to renew be given plaintiffs not less than thirty days prior to the expiration of the original, or any extension. The terms of the lease required the payment of rent at the rate of $300.00 per month, payable on the 15th of each month, in

advance. The lease provided: "In the event the demised premises, or any part thereof, shall be abandoned by the lessees or shall become vacant during the said term, the lessors or its agents may immediately or at any time thereafter, re-enter and resume possession of said premises . . . No entry by the lessor shall be deemed an acceptance of a surrender of this lease."

Plaintiffs further allege the defendants paid the rent for the first year and in apt time gave written notice of their intention to exercise their option to extend the lease for an additional year. In paragraph five of the complaint the plaintiffs allege "that the amount of monthly rentals now past due and unpaid by the defendants aggregates $1,800.00, the same being rentals for the months of July, August, September, October, November and December." However, during the trial, plaintiffs were allowed to amend the complaint, eliminating the month of July and claiming the amount due up to the date plaintiffs repossessed the leased premises to be only $1,500.00 instead of the $1,800.00 set out in the original complaint.

In paragraph six the plaintiffs allege ". . . upon default of defendants in payment of rent . . . plaintiffs re-entered the premises on or about ...... day of November, 1952, and by reason of said breach and default the said defendants under said agreement thereupon became justly and fairly liable and indebted to plaintiffs for liquidated damages with respect to the breach and default in the additional sum of $2,100.00." This claim was for the remaining seven months of the extended term after breach as contended by the plaintiffs.

The defendants filed separate answers, admitting the execution of the lease and the giving of the notice to renew for an additional year. The defendant Griffin alleges "that during the month of October, 1951, he dissolved partnership with Williams and that he entered into an agreement with plaintiffs whereby they released him from any and all further obligations under the lease, and that he signed the written notice of election to extend for another year merely as an accommodation and to prevent the necessity of having the plaintiffs prepare another lease, and that he owed the plaintiffs nothing."

The defendant Williams answered, admitting the execution of the lease and the giving of notice of renewal for an additional year. He alleges the notice to renew was given "upon the insistence of one of the plaintiffs, Alex Weinstein, and at his request." He denied that he had breached the contract and that he was due anything by way of rent.

Upon the trial, the plaintiffs introduced the written lease and the written notice signed by the defendants dated 12 June, 1952, signifying their election to renew for an additional year. Plaintiffs denied that there was

any agreement to release either of the defendants from the obligations of the contract and the renewal thereof.

The defendant Griffin testified: "I am not now in partnership with Williams; that was terminated in October, 1951. I have not had any interest in the business since that time; I sold out everything. I called Ben, Alex's brother, and told him I was withdrawing from the partnership and he said, 'all right.' I did not thereafter have any business dealings with them . . . During the month of June, 1951, I signed an extension or renewal of the lease as they said they would not want to have to rewrite it. He also stated he knew I wasn't in the business . . . I was only doing him (Alex Weinstein) a favor and he knew I was out of it. I was doing him a favor by keeping him from having to draw a new lease. I was told that was the only reason . . . Donald brought it to me and he asked me to sign it so they wouldn't have to rewrite it and that I wouldn't be liable for the lease."

Defendant Williams testified: "In July (1952) I went to Mr. Alex Weinstein and told him I was having financial difficulties and if I couldn't make arrangements in a few days I would have to close up, and I said 'I'll let you know about it,' and he told me, said 'all right.' I went back the last few days of August and saw Mr. Alex Weinstein . . . and I told him, 'Alex, I don't have any choice. I have to close up. I'll have the rent paid up until the 15th day of August and I'll be out of your lot on the 15th day of August.' He said 'All right.' I was out on the 15th of the month."

Six issues were submitted to and answered by the jury:

"1. Did the defendants execute and secure an extension of the lease agreement dated August 6, 1951? Answer: Yes (answered by the court by consent).

"2. Was the defendant John W. Griffin thereafter released from the extension of the lease agreement? Answer: No.

"3. Was the defendant Donald F. Williams released by the plaintiffs from the extension of the lease agreement? Answer: No.

"4. In what amount, if any, are the plaintiffs entitled to recover of the defendant John W. Griffin by reason of any breach of said agreement? Answer: ...............

"5. In what amount, if any, are the plaintiffs entitled to recover of the defendant Donald F. Williams by reason of any breach of said agreement? Answer: ... .............

"6. In what amount, if any, are the defendant John W. Griffin and the defendant Donald F. Williams indebted to the plaintiffs? Answer: $3,600.00."

Judgment was entered against the defendants for $3,600.00, from which they appealed.

*J. C. B. Ehringhaus, Jr., for plaintiffs, appellees.*
*Allen Langston for defendant Griffin, appellant.*
*J. C. Keeter and Ellis Nassif for defendant Williams, appellant.*

HIGGINS, J.    Section 10 of the lease provides for liquidated damages in case of breach.    The section, standing alone, is confusing.    Yet, considered in the light of other provisions, its purport becomes reasonably clear; that is, it fixes a rule for determining liquidated damages for the unexpired term in case of breach.    Stripped of its unnecessary verbiage, the section provides that liquidated damages shall be determined for the remainder of the term after breach by allowing the defendants credit for the reasonable rental value of the premises for the unexpired portion of the lease, less a discount of four per cent per annum, or the difference between the reasonable rental value and the rent provided in the contract. The difference between the reasonable rental value thus discounted, when deducted from the contract price of $300.00 per month, shall be the liquidated damages for the unexpired term.    The plaintiffs, therefore, if their contention prevails, would be entitled to recover $300.00 per month rent from the beginning of the renewal period until the breach, which they allege occurred in November, 1952, and then recover liquidated damages for the remainder of the year calculated according to the rule above given.

Realizing there is room for misunderstanding in the statement of mathematical problems, we are offering a sample solution for the problem here presented.    Assuming the defendants are bound for the additional year of the lease beginning 15 August, 1952, and that the breach occurred on 15 November, 1952, and assuming the jury should find the reasonable rental value of the premises to be $200.00 per month, the defendants' liability would work out in this manner : For the four months before the breach the plaintiffs would be entitled to recover rent at the rate of $300.00 per month, or $1,200.00.    For the remaining eight months the reasonable rental value would be $1,600.00.    The difference between the rent provided in the contract and the $1,600.00 would be $800.00. The discount on $800.00 for eight months at the rate of four per cent per annum would be $21.33.    Deducting the discount from the $800.00 would fix the liquidated damages for the eight months at $778.67.    This, when added to the rental for the four months before breach, would fix the total liability of the defendants at $1,978.67, assuming, of course, all issues were answered in their favor.

While liquidated damages, if in the nature of a penalty, are not favored (*Crawford v. Allen,* 189 N.C. 434, 127 S.E. 521), the liquidated damages fixed in the contract are not less favorable to the defendants than the rule of law would impose in the absence of any provision for liquidated damages.    The rule fixed in the lease gives the defendants credit for the

reasonable rental value from the date of the breach. The law, in the absence of Section 10 of the lease, would require only that the plaintiffs exercise reasonable diligence to relet the property and thus minimize the defendants' loss. After due diligence the plaintiff might not be able to relet immediately or they might not be able to find a tenant who would pay the reasonable rental value for the remaining part of the term, in which event the defendants would get no credit at all. In no wise could the liquidated damages fixed in the lease be considered unreasonable or oppressive, or "arbitrarily adopted without reference to the loss actually suffered and liable to arise in case of breach." *Horn v. Poindexter*, 176 N.C. 620, 97 S.E. 653.

There appears no reason, therefore, why the formula fixed by the parties for determining damages should not be allowed.

The trial court charged the jury as follows: "Now, if you come to the sixth issue, 'In what amount, if any, are the defendant John W. Griffin and defendant Donald F. Williams indebted to the plaintiffs,' the burden of that issue is upon the plaintiffs to satisfy you from the evidence and by its greater weight; that is to say, if you have heretofore found that neither Griffin nor Williams *were* released, but that they were both bound under the extension agreement as they were under the original agreement, then you would answer the sixth issue against both defendants in the sum of $3,600.00."

The court, in giving the instructions, neither took into account Section 10 in the lease with respect to liquidated damages for the unexpired term, nor the fact plaintiffs received possession of the leased premises and had the benefit of such use.

There is no finding in the verdict that the contract was breached, or, if so, when the breach occurred. The plaintiffs allege that the contract was breached and that they re-entered on ...... November, 1952. The defendants deny the breach in their pleadings, and nowhere in their testimony do they admit that they breached the contract. In fact, they claim they never went into possession for the unexpired term but that they surrendered the premises on 15 August, 1952, the day the original term expired, and this was done with plaintiffs' approval.

There is doubt, also, as to whether the court was sufficiently explicit in its instructions to the jury as to the law arising upon defendants' contentions and evidence with respect to agreement of the plaintiffs to release them from their obligations under the lease agreement and the renewal thereof. Exceptions in the record raise these questions.

For the reasons indicated, it is ordered that there be a

New trial.