**Herschel LANGE, t/a H. Lange Co., Claimant,**

v.

**FARMERS FEDERATION COOPERATIVE, INC., Bankrupt.**

No. 1228.

United States District Court
W. D. North Carolina,
Asheville Division.

Jan. 17, 1966.

James S. Howell and Oscar Stanton, Asheville, N. C., for claimant.

H. Kenneth Lee, Asheville, N. C., trustee for bankrupt.

T. A. Uzzell, Asheville, N. C., for trustee.

CRAVEN, Chief Judge.

Herschel Lange, by this appeal from the Referee in Bankruptcy, seeks to recover all or some part of $3,000.00 which he paid to Farmers Federation Cooperative, Inc. (hereinafter called Federation) as a deposit on the purchase price of certain realty sold to Lange by the Federation. The Trustee in Bankruptcy rejected Lange's proof of claim, and was sustained in doing so by decision of the Referee.

The facts, as found by the Referee, appear to be as follows:

On September 27, 1961, prior to its bankruptcy, Federation caused to be held an auction sale to dispose of certain of its property, including a parcel located in Asheville, North Carolina. At the auction sale, Lange was the successful bidder for a price of $30,000.00 and gave his check (made out to Federation) in the amount of $3,000.00. Carson & Kees were the auctioneers. The testimony does not reveal who actually conducted the auction sale. The entire testimony with respect to the words used at the sale is as follows:

"Q What announcement did the auctioneer make with respect to bidding?

"OBJECTION by Mr. Stanton

"OVERRULED

"EXCEPTION

"A They announced they would sell the property on Broadway facing Market Street and facing Walnut separately—that the property would go to the highest bidder, 10% cash deposit required, that the Farmers Federation Cooperative would deliver a warranty deed, free and clear of all liens and encumbrances, and that if the sale was not consummated, the deposit would be forfeited." [1]

The Referee found the terms of the sale to be: 10 percent down, balance due within 30 days, and that if the balance of the purchase price was not paid within 30 days,[2] the earnest money would be forfeited.

Subsequent to the auction sale, Lange had some difficulty making financial arrangements to provide

---

[1] This testimony came from a lawyer of unimpeachable integrity. But it is lawyer language and appears to be his own shorthand impression of what occurred rather than an attempt to repeat the words actually used by the auctioneer.

[2] The auctioneer did not mention time of settlement. The 30-day period came from a handbill—which said nothing about forfeiture. As to effect of variance between handbill and oral declarations, see 7 Am.Jur.2d 237 "Auctions and Auctioneers" Section 19.

for the balance remaining in the amount of $27,000.00, and there were some further negotiations between the parties.[3] After the lapse of a 10 day extension of time, Federation tendered Lange a deed to the property, and he failed to pay the balance due in the amount of $27,000.00. A few days later, Federation sold the property at private sale, and not at auction, to Free Service Realty Company for $29,000.00, and a deed to the property was executed and delivered. Free Service paid the sum of $29,000.00 to Federation, and by retaining Lange's $3,000.00 earnest money, Federation obtained for its property a gross sum of $32,000.00, which is $2,000.00 more than the price bid at the auction sale by Lange.

The foregoing findings of fact are supported by substantial evidence and are not clearly erroneous. Gen.Order in Bankruptcy No. 47.

The Referee held that Federation was entitled to retain the entire $3,000.00— apparently because of the testimony that a condition of the sale was that "the earnest money would be forfeited". Lange's contrary contention, i. e., that he is entitled to recover the entire $3,000.00, is without merit. The much harder question is whether Lange is entitled to recover any part of his $3,000.00 deposit.

■ The question arises in the exercise of the bankruptcy jurisdiction of a federal court. Jurisdiction is not based on diversity of citizenship. "It is frequently said that the Erie doctrine [Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] applies only in cases in which jurisdiction is based on diversity of citizenship." Wright, Federal Courts, Section 60 p. 217 (1963 Ed.). Even so, application of or absorption of state law, to the extent it can be ascer-

tained, may be a wise approach. To the extent that there is a "ready made body of state law", it is well to draw on it. De Sylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415, 1428 (1956). But there is greater flexibility for the federal court than in Erie-type situations where state law is controlling. Wright, supra, at p. 217.

■ What is the law of North Carolina with respect to the retention of a deposit made at auction sale as declared by its Legislature in a statute or by its highest court? As far as I can ascertain,[4] neither the Legislature of North Carolina nor its Supreme Court has spoken precisely on the question. In such a situation, a federal court must look for other indications of the state law, and carefully considered dicta of the state court carry weight, and may even, in the absence of any conflicting indication of the law of the state, be regarded as conclusive. Wright, Federal Courts, Section 58 p. 205 (1963 Ed.); 1 Barron & Holtzoff 41, Federal Practice & Procedure, Section 8.

Many times the North Carolina Supreme Court has expressed its abhorrence of penalties. It has made no difference to the court that such penalties are sometimes denominated as "liquidated damages". Weinstein v. Griffin, 241 N.C. 161, 84 S.E.2d 549, at 552 (1954). The court has always looked through the language of agreements to determine whether or not liquidated damages should be considered "unreasonable or oppressive" or "arbitrarily adopted without reference to the loss actually suffered and liable to arise in case of breach." Horn v. Poindexter, 176 N.C. 620, 97 S.E. 653 (1918). In Horn the supreme court reversed the decision of the lower court which had enforced a written contract providing for a performance bond in the amount of $800.00 to be applied as

---

3. Federation granted Lange an additional 10 days time within which to pay the $27,000.00, and later on proposed to sell to him at an increased price, i. e., $31,500.00. The Referee correctly failed to find that a novation or new contract had

supplanted the one made at the auction sale.

4. Counsel do not cite any North Carolina decision directly in point.

liquidated damage and not as a penalty in the event of breach. The court stated its adherence to the principle that a just compensation is the result to be sought, and referred to a tendency to regard these stipulations for a fixed sum to cover unascertained damages as being in the nature of a penalty which will not be enforced. The case was remanded for determination of actual damages suffered without regard to the amount designated in the contract as liquidated damages. Again in Crawford v. Allen, 189 N.C. 434, 127 S.E. 521 (1925), the court disregarded the written contractual agreements to pay $500.00 and $1,500.00 as liquidated damages, and intimated (although it did not so hold) that a court exercising equitable jurisdiction would regard them as deposits to cover liquidated damages. The court said: "A court of equity, which does not favor forfeitures, and will not enforce penalties, but seeks to do justice in accordance with the rights of both parties, as determined by an enlightened conscience, will not be swift to sustain an undertaking to pay liquidated damages, where there has been no injury and no loss." Id., 127 S.E. at 525. It was explained later in the opinion that the reason there was "no loss" was simply because the realty had appreciated in value.

If the foregoing cases indicate the law of North Carolina with respect to forfeiture provisions in formal written contracts, it cannot be lightly assumed that the law would be more harsh with respect to forfeitures and penalties arrived at informally and resting purely upon the oral declaration of an auctioneer to which the only assent is a silent one.[5]

Williston summarizes the principle prohibiting the enforcement of forfeitures or penalties, even though they may be described as "liquidated damages" as follows:

"An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach and

(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation." [6]

The distinction between penalty and forfeiture, on the one hand, and liquidated damages, on the other, is a much litigated one. Forfeitures and penalties are provisions held *in terrorem* over the promissor to deter him from breaking his promise. 5 Williston, Contracts Section 776 p. 668 (3rd ed. 1961). Liquidated damage is a sum fixed as an estimate, made by the parties at the time when the contract is entered into, of the extent of the injury which a breach of the contract will cause. Ibid.

The problem is not one of interpretation. That "earnest money would be forfeited" is plain enough. If the law permits such a condition to be attached to an auction sale, it ought not be avoided by exegesis. But "we are not construing the contract with reference to intention of the parties. Intent is of no practical importance. The question is not what the parties intended, but whether the sum is in fact in the nature of a penalty." Id. at p. 682, and n. 6.

Running counter to Williston and my own interpretation of the North Carolina decisions discussed hereinabove are statements appearing in the general treatises. In 7 C.J.S. Auctions and Auctioneers § 8e, p. 1264, appears the statement: "Where it is stipulated that the

5. Lange testified he did not hear the announcement of forfeiture of earnest money. See 7 Am.Jur.2d 236 "Auctions and Auctioneers", Section 18; 1 Williston, Contracts, Section 29, p. 78 (3rd ed. 1957).

6. 5 Williston, Contracts, Section 769, p. 639 and n. 6 (3rd ed. 1961), quoting from Mead v. Anton, 33 Wash.2d 741, 207 P.2d 227, 10 A.L.R.2d 588, which opinion quotes Rest. Contracts Section 339.

deposit shall be forfeited if the purchaser does not comply with his contract, the deposit, in such an event, may not be recovered back either at law or in equity * * *." A Massachusetts decision, not of recent vintage, is cited as authority for this proposition.[7] The same Massachusetts decision is cited in 7 Am.Jur.2d "Auctions and Auctioneers" Section 46 at p. 259, for the proposition that "it is well settled that where the vendee defaults, he is not entitled to the return of his deposit, made under an agreement that it will be forfeited to the seller in the event the vendee fails to perform." It is stated, however, in the same paragraph "that the default of the vendee does not work a forfeiture of his deposit in the absence of an *express* (emphasis mine) agreement to that effect, the vendor merely being entitled to deduct therefrom the actual damages he may have sustained."

There does not appear to be an established "weight of authority" with respect to forfeiture of a deposit made at auction sale.

■ I am persuaded by the language of the North Carolina cases that the Supreme Court of North Carolina would probably apply its oft-stated abhorrence of forfeiture to an auction sale case. The rationale of Williston seems to me to coincide with the approach of the North Carolina Supreme Court. The following test can be as readily applied to an auction sale as to more formal contracts, and there does not appear to be any compelling reason why it should not be:

(1) If the deposit is unreasonable in amount and the actual damage will be negligible *or* capable of actual measurement, the forfeiture of the deposit will not be permitted even though this is expressly agreed. 5 Williston, Contracts Section 790, p. 766 at 767 (3rd ed. 1961).

(2) On the other hand, if the deposit is reasonable in amount, a pro-

vision forfeiting it in case of a breach will be enforced. *Ibid.*

■ This deposit was 10 percent of the purchase price. Forfeiture of such a percentage is not *per se* unreasonable as a matter of law. But, quickly and without any special effort or expense, the property was resold at private sale [8] at a 3⅓ percent discount. With hindsight, it is apparent that the deposit was 3 times the amount necessary to prevent loss to the seller. The North Carolina Supreme Court has specifically approved examination of the facts after the event. In Horn v. Poindexter, supra, the court expressed its disapproval of forfeiture "wherever there is such marked disproportion between the amount fixed upon and the damages likely to arise as to render them unreasonable or oppressive, *or* (emphasis mine) they may become so in the course of adjustment, because, with the data for correct ascertainment readily attainable, it is evident, from a perusal of the contract, that the amount has been arbitrarily adopted without reference to the loss actually suffered and liable to arise in case of breach."

On the facts of this case, the damage is held to be capable of actual measurement, and the amount of the deposit is held to have been unreasonable in amount.

■ The actual damage sustained by Federation is $1,000.00 (the difference between auction sale price and private sale price) plus actual and necessary expenses incurred by Federation in negotiating and consummating the second sale.[9]

The case will be remanded to the Referee to determine damages according to the foregoing formula. Having done so, he will deduct the damage sustained from the amount of the deposit and allow Lange's proof of claim to the extent of the balance remaining.

Judgment will be entered accordingly.

---

7. Donahue v. Parkman, 161 Mass. 412, 37 N.E. 205.

8. Ordinarily, the resale should be by auction. 7 C.J.S. Auctions and Auctioneers § 8d(4), p. 1264.

9. See 7 Am.Jur.2d 265–266, "Auctions and Auctioneers" Section 53, for other permissible measurements of damage.